**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Angelica ACEVEDO,**
**Defendant–Appellant.**

**No. 89–1176.**

United States Court of Appeals,
Seventh Circuit.

Argued June 8, 1989.

Decided Aug. 14, 1989.

Thomas M. Durkin and Robert S. Rivkin (argued), Asst. U.S. Attys., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Kenneth J. Wadas (argued), Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, CUDAHY and KANNE, Circuit Judges.

BAUER, Chief Judge.

A federal grand jury indicted defendant Angelica Acevedo on one count of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). A jury found Acevedo guilty of both counts. Acevedo's attorney filed a motion to vacate the judgment of guilty and for a new trial, alleging an error in the jury instructions. The district court denied the motion. Before sentencing, Acevedo retained new counsel who filed another mo-

tion for a new trial, this one alleging ineffective assistance of counsel. The district court again denied the motion. The court then sentenced Acevedo to 121 months imprisonment, to be followed by four years of supervised release. This is Acevedo's appeal.

On August 23, 1987, Georgia State Patrolman Ralston stopped a 1984 Toyota van near Dalton, Georgia, because its taillights were out. He arrested its driver, George Vasquez, for driving with a suspended New York license, and impounded the van after noticing a small amount of marijuana in the right front passenger seat. The van was registered to a Rick Muniz. Ralston obtained a warrant and then searched the van, but did not find anything other than marijuana residue. A couple of days later, two people from Chicago, claiming to know Vasquez, tried to pick up the van. Because they could not prove ownership, the sheriff's department refused to release the van. Ralston became suspicious and searched the van again. This time he found a one kilogram package of cocaine behind the taillight and four more one kilogram packages of cocaine in the insulation behind the van's rear air-conditioning control panel. The Drug Enforcement Agency (DEA) then took over responsibility for the investigation. DEA agents "dummied" the five packages of cocaine by replacing the cocaine with flour. In two of the five packages, the DEA agents also placed a half gram bag of the same cocaine which they had just removed from the packages. The packages were then dusted with an invisible fluorescent powder and returned to the van.

Approximately five months later, on January 28, 1988, Angelica Acevedo bought three airline tickets and flew from Chicago to Atlanta with two men. Upon arriving in Atlanta, Acevedo rented a car and drove to Dalton, where she rented a motel room for the night. Acevedo then took a taxi to the Dalton sheriff's department. After obtaining release of the van, she drove it back to the motel and spent the night there. (From the time that she picked up the van until her arrest in Chicago three days later, DEA agents kept Acevedo and the van under twenty-four hour surveillance.) The next morning, Acevedo and the two unidentified men headed north in the van. They arrived in Chicago that evening and left the van near Acevedo's home. On January 31, Acevedo returned to the van and drove around in an evasive manner for about forty-five minutes. The DEA agents figured that Acevedo knew she was being followed and arrested her after she got out of the van.

Attorney George Pfeifer represented Acevedo at trial. After the government rested its case, Pfeifer told the court that Acevedo was his only projected defense witness and that she had not yet decided whether to testify. The court granted Pfeifer a fifteen minute recess. Pfeifer returned and stated that Acevedo did not want to testify. The court then asked Acevedo whether she understood that the decision not to testify was *her* decision to make, not her attorney's. Acevedo answered "yes" and stated again that she did not want to testify. The defense then rested. After the jury found Acevedo guilty, Pfeifer filed a motion for a new trial, alleging that an erroneous jury instruction had deprived the defendant of a fair trial. The court denied the motion. Prior to sentencing, Acevedo retained new counsel who filed a second motion for a new trial, or in the alternative for an evidentiary hearing on the motion. This motion alleged that Acevedo had been denied effective assistance of counsel.

In the affidavit attached to the motion, Acevedo alleged that she "had a good faith defense to the charges." Acevedo stated that Pfeifer had arranged for the release of the van and represented to her that she would be able to purchase the van. Two days before she went to Dalton to pick up the van, Acevedo claims that she and Pfeifer met and that he gave her "papers and instructions on who to contact in Georgia to obtain the release of the van." Acevedo further alleged that she wanted to testify at trial but that "immediately prior to the time for the defense to present its case, attorney Pfeifer told [her] that if she testified, she could not mention his name, other-

wise he could not represent her." She also alleged that "Pfeifer indicated that she could not testify without making him a defense witness." Acevedo concluded that her decision not to testify "was made without benefit of effective assistance of counsel because of her attorney Pfeifer's conflict of interest in her case as a potential witness." The district court disagreed with this conclusion and denied the motion for a new trial.

■■■■ On appeal, Acevedo pursues her claim that she was denied effective assistance of counsel because of Pfeifer's alleged conflict of interest. To establish a violation of the constitutional right to effective assistance, Acevedo must demonstrate, one, that serious attorney error occurred and, two, that "but for" the error, the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The prejudice prong of the test, however, is altered when the defendant alleges the existence of an attorney conflict of interest, as in this case. Had Acevedo put the trial court on notice of a potential conflict and the court failed to inquire further, a reviewing court will presume prejudice "upon a showing of possible prejudice." *United States v. Marrera,* 768 F.2d 201, 205 (7th Cir.1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 321. But because Acevedo did not inform the court of a potential conflict, Acevedo must now "demonstrate that an actual conflict of interest adversely affected [Pfeifer's] performance," in order to be entitled to a presumption of prejudice. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (*quoting Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)).

■■■■ Acevedo alleges that an actual conflict existed because Pfeifer made the arrangements for her to pick up the van. This allegation, by itself, is insufficient to establish a conflict of interest. Acevedo is obviously trying to create the inference that Pfeifer was involved in the distribution of cocaine found in the van. Her affidavit, however, is significantly devoid of any allegation that Pfeifer was involved in criminal activity. Nor does her affidavit contain an allegation which would support the desired inference. Had Acevedo alleged that Pfeifer initiated contact with her, or that she initiated contact with Pfeifer at the instigation of someone who *was* involved in the transportation of cocaine found in the van, then the affidavit would support Acevedo's claim that Pfeifer labored under a conflict of interest. In either of these situations, Pfeifer would have an obvious interest in preventing Acevedo from testifying and thus implicating him in the illegal scheme.

Acevedo, however, fails to make either of these allegations. That she makes no allegation of criminal activity by Pfeifer implies that she cannot. This implication is bolstered by the curious wording of her affidavit, which consciously fails to furnish any information about the genesis of her relationship with Pfeifer. It begins in the middle, with the allegation that Pfeifer made the pick-up arrangements. Although Acevedo would like us to conclude from this statement that Pfeifer set her up, this statement is consistent with another scenario: that Pfeifer made the arrangements at Acevedo's behest. Under this scenario, Pfeifer is the innocent participant and Acevedo is the criminal ringleader.

■■■■ For the purpose of determining whether Acevedo has established an actual conflict of interest, we assume that Pfeifer did make the arrangements as alleged. If Pfeifer was, in fact, involved in the situation, no matter how innocently, we are troubled by his failure to disclose to Acevedo and to the court that he might be a potential witness. His alleged breach of ethics, however, does not automatically establish that Acevedo was denied effective assistance of counsel. *Cerro v. United States,* 872 F.2d 780 (7th Cir.1989). In order to establish an actual conflict, Acevedo must demonstrate "as a threshold matter ... that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *United States v. Horton,* 845

F.2d 1414, 1419 (7th Cir.1988). Pfeifer would be faced with this choice only if he was criminally involved.[1] Acevedo's affidavit contains no such allegation. On appeal, Acevedo asks us to speculate about Pfeifer's involvement. Her burden, however, was to demonstrate an *actual* conflict. Because she failed to do so, she is not entitled to a presumption of prejudice.

 Acevedo's second claim on appeal is that she was denied a fair trial because the court instructed the jury that the government did not have to prove that Acevedo possessed the amount of cocaine alleged in the indictment: the government only had to prove that Acevedo possessed a "measurable amount" of cocaine. Acevedo acknowledges that this instruction is a correct statement of law. See *United States v. Jeffers*, 524 F.2d 253, 258 (7th Cir.1975) (government does not have to prove possession of the amount of the controlled substance alleged in the indictment, but only of "some measurable amount"). She argues that *Jeffers* no longer should be the law after the enactment of the mandatory minimum penalties of 21 U.S.C. § 841(b). She is wrong. Section 841(b) is a penalty enhancement provision. It provides, in relevant part, that in a case involving "500 grams or more of a mixture of substance containing a detectible amount of ... cocaine," the defendant shall be sentenced to a term of not less than five years' imprisonment. 21 U.S.C. § 841(b)(1)(B)(ii)(II). Section 841(b) has nothing to do with the substantive elements of the underlying offense. Because the quantity of the controlled substance is a sentencing issue unrelated to a defendant's underlying guilt, the trial court properly instructed the jury. *See United States v. Scanzello*, 832 F.2d 18, 22 (3rd Cir.1987) (Section 841(b)(6) is an enhanced penalty provision, the elements of which need not be presented to the jury).

AFFIRMED.

---

1. Assuming that Acevedo contacted Pfeifer, then Pfeifer had nothing to fear from Acevedo's testimony. His advice not to testify might have been prudent. The jury had already heard evidence that Acevedo traveled across the country, expending more than one thousand dollars of her own money and accompanied by two men, to allegedly buy a five year old van. In addition, at the time of her arrest her hands tested positive for the presence of fluorescent powder. Although these facts lead to the conclusion that Acevedo knew about the hidden contents of the van, testimony that Acevedo had contacted and retained an attorney would have been even more incriminating. Furthermore, this evidence would have created the inference that Acevedo was more than a mere gopher in the distribution system.