UNITED STATES of America, Plaintiff–Appellee,

v.

Juan A. TRUJILLO, Defendant–Appellant.

No. 91–1740.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1992.

Decided March 24, 1992.

As Modified on Grant of Rehearing April 20, 1992.

Joshua T. Buchman, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Barry R. Elden, Diane L. Saltoun (argued), Asst. U.S. Attys., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Robert A. Loeb (argued), Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, KANNE, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

BAUER, Chief Judge.

Juan Anthony Trujillo was convicted of possession with intent to distribute a controlled substance (cocaine) in violation of 21 U.S.C. § 841(a). On appeal, he argues that § 841(a) is unconstitutional because the quantity of the controlled substance is not

included as an element of the offense. He argues that because the amount of narcotics is a determinative factor in sentencing, due process requires that a jury determine the amount beyond a reasonable doubt. He also argues that there was insufficient evidence to support his conviction because the testimony of the government's confidential informant was uncorroborated and inherently unreliable. Finding no merit in these challenges, we affirm.

## I.

The FBI investigation culminating in Trujillo's arrest began in March 1990. Agents obtained information that Angel Rios, whom they believed was involved in smuggling Columbian cocaine and distributing it in Chicago, was going to pick up a large cocaine shipment in Houston, Texas. They also learned that the fifty-kilo shipment would be concealed in a van parked in the airport parking lot, and that Rios would drive the van to Chicago. The FBI located the van, and obtained a search warrant. Although they found a hidden compartment, there were no narcotics in the van.

An FBI agent flew to Houston and met Rios in the lot where the van had been parked. As Rios searched the lot, the agent approached him and identified himself. The agent told Rios that the FBI knew of his drug activities in Chicago. The agent searched Rios, and although Rios was carrying no weapons or illegal drugs, he agreed to cooperate with the FBI.

Rios told the FBI that Trujillo participated in some of his prior cocaine transactions. Rios said that he and Trujillo had met at Trujillo's bar, and discussed the possibility of Trujillo buying cocaine from Rios. Trujillo agreed to purchase three to four kilos of a fifty-kilo shipment Rios was expecting. Rios told the FBI that Trujillo had shown him $22,000 cash to convince him that Trujillo was serious about the deal. This particular fifty-kilo shipment fell through, however. The conversations about the cash occurred in March 1990. The fifty-kilo deal that fell through may well have been the Houston shipment the FBI heard about. Not long after these negotiations, in late March or early April 1990, Rios began cooperating with the FBI.

At the FBI's behest, Rios began calling Trujillo to set up a cocaine sale. The phone conversations between Rios and Trujillo were taped. The bulk of these conversations took place in what the FBI alleges is a drug dealers' argot. Because these conversations constitute a large portion of the government's evidence, we shall discuss them at some length.

Rios called Trujillo on April 12, 1990, at his tavern, but never reached him. On the following day, Rios called Trujillo at home. Trujillo recognized his voice; Rios told Trujillo that a "man's coming on a trip with a big family." Trial Transcript (Tr.) at 180. Then the two men began discussing "invitations":

Trujillo: Yeah. We invite them and whatever the invitation costs.... If it costs ... and ... No, no, I can't tell you, no, how much its going to cost.

Rios: Well, but, but, more or less, uh, more or less, what number are you at to see if, if we can go over or something? You know? The, the invitation.

Trujillo: No.... Yes, we will go over.

Rios: On what, what invitation are you on?

Trujillo: No, well, you tell me how much more or less the invitation's going to cost?

Rios: Well, uh....

Trujillo: The admission price....

Rios: The admission price ... my friend to me the admission price is two three.

Trujillo: That's perfect.

      \*    \*    \*    \*    \*    \*

Trujillo: I need, uh ... several tickets.

      \*    \*    \*    \*    \*    \*

Rios: Uh, and what was I going to tell you? And at least, and if.... Not like the other day when my friend didn't come through, but when I know I've got my hands on it, I'll tell you. Okay. Now, I'm going for the, the

invitations. Would you be able to have things ready for about two or three?

\*   \*   \*   \*   \*   \*

Rios: Perfect. Then I'll call you as soon as I've got my hands on it.

Trujillo: Okay.

Tr. at 183. Rios interpreted the conversation for the court. Tr. at 186–88. Rios said the "friend" was the drug supplier, the "big family" was a big shipment of cocaine, the "invitation" was a kilo of cocaine, and the "admission price" was the price per kilo of cocaine. "Two three" mean that the price-per-kilo was $23,000; "several tickets" meant that Trujillo wanted several kilos. The reference to the "other day" concerns the last aborted fifty-kilo transaction.

Through this and several other conversations, Rios arranged to sell six kilos of cocaine to Trujillo. Trujillo did not have the money for all the cocaine so they arranged that Trujillo would pick up the cocaine and sell it, and return the money to Rios. Trujillo, because of the botched prior deal, was concerned that Rios could not deliver the cocaine he promised.

Rios: No, no, no. You'll see them. You'll see. And once you see them you go deliver it to your friend and bring me my receipts.

Trujillo: I know.

Rios: And I'll wait for you there. Okay?

Trujillo: Uh ... uh ... but, I mean ... the problem is I won't have the receipts like right at the moment. You know?

Rios: No, no problem. But don't let me down.

Trujillo: No, no. No way!

Rios: Okay.... Okay.

Trujillo: You trust me?

Rios: Sure. Then I'll give you six and you just get me the money for two of them for today. Okay?

Trujillo: For one or two today. No problem!

Rios: Well, ready, [unintelligible]

Trujillo: Even three, four if you want.

Rios: All right, ready, buddy.

Trujillo: Okay, champ.

Tr. at 205–06. During this conversation Trujillo and Rios agreed to meet at the Amoco station on Irving Park Road and Western Avenue in Chicago at 4:30 p.m. on April 19, 1990. Rios wore a recording device to the meeting with Trujillo, and FBI agents watched the deal go down. At the meeting, Rios delivered a duffel bag containing six kilos of cocaine to Trujillo.

Rios: Well, there's six, six. Did you bring me any money?

Trujillo: I won't let you down, champ, no.

Rios: Don't let me down because....

Trujillo: Yes.

Rios: You'll get me in trouble.

Trujillo: Uh.... Champ?

Rios: What time are you going to call me?

Trujillo: By 9:00 o'clock tonight, I'll have ... at least three for you.

Rios: Three? And the rest....

Trujillo: Yeah.

Rios: In 48 hours is fine.

Tr. at 218. When Trujillo carried the duffel bag back to his car, FBI agents arrested him. One agent advised Trujillo of his constitutional rights in Spanish, and had him sign a waiver-of-rights form that was printed in Spanish. Trujillo told the agents that he thought the bag contained clothing because he knew Rios sold stolen clothing. He also said that he would have sent someone else for the bag if he thought it contained cocaine. At trial Rios said he had never sold stolen clothing.

Trujillo's wife testified that she, the defendant, and some of their relatives operated a clothing boutique and also promoted boxing and musical concerts.

The jury found Trujillo guilty of the charges alleged in the indictment (one count of possession with intent to distribute a controlled substance under 21 U.S.C. § 841). At the sentencing hearing, the district court found that the evidence established beyond a reasonable doubt that Trujillo had agreed to accept six kilograms of cocaine and that Rios delivered 5977.2 grams of cocaine to Trujillo on April 19, 1990. The judge imposed a fourteen-year

prison term, followed by a five-year term of supervised release.

## II.

Trujillo argues that § 841 is unconstitutional because it fails to include a crucial element—the amount of drugs possessed by the defendant. This lack, he argues, deprives him of due process because the jury did not determine the amount of drugs he knowingly possessed. He argues that he is entitled to a jury finding because the amount plays a crucial role in sentencing under the Guidelines. He further asserts that the caselaw in this and other circuits, considering whether amount is an element of the offense, is inapposite to his constitutional challenge of the statute. He argues the caselaw is inapplicable because it interprets the statute rather than addressing his constitutional challenge. We believe this distinction cuts matters a little too fine.

■ "It is well-settled that where the severity of the punishment is linked to the existence or nonexistence of exculpatory or mitigating facts, the preponderance of the evidence standard satisfies due process." *United States v. Schuster*, 948 F.2d 313, 315 (7th Cir.1991) (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 84, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986)). *See also United States v. Fonner*, 920 F.2d 1330, 1333 (7th Cir.1990). This court has held consistently that the quantity of drugs involved in a narcotics case does not constitute a substantive element of the drug offense. *Schuster*, 948 F.2d at 315 (collecting cases). *See, e.g., United States v. Ebbole*, 917 F.2d 1495, 1501 (7th Cir.1990) (quantity of drugs is not an element of drug offenses); *United States v. Whitley*, 905 F.2d 163, 165 (7th Cir.1990) ("Quantity is not a substantive element of a § 841(a) offense. Any 'measurable amount' will do.") (quoting *United States v. Acevedo*, 891 F.2d 607, 611 (7th Cir.1989)); *United States v. McNeese*, 901 F.2d 585, 600–01 (7th Cir.1990) ("The quantity of the controlled substance is not an essential element of the crimes proscribed under sections 841(a)(1) and 846; rather, it is a sentencing issue to be raised after proof of a defendant's underlying guilt.").

Trujillo bases his constitutional challenge upon *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). *Winship* and *Mullaney* hold that due process requires every fact necessary to constitute the crime with which a defendant is charged to be proved beyond a reasonable doubt. Nevertheless, a legislature's definition of the elements of the offense is usually dispositive. *McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1985). There are constitutional limits to a legislature's ability to define an offense and the factors enhancing punishment for its violation. But, so long as the enhancement factor has not been "tailored to ... be a tail which wags the dog of the substantive offense" the Constitution is not violated. *Id.* at 85, 106 S.Ct. at 2415–16. In *McMillan*, the Court considered a provision of Pennsylvania's Mandatory Minimum Sentencing Act, which provided a mandatory minimum sentence if the defendant visibly possessed a firearm during the commission of certain felonies. *Id.* at 81, 106 S.Ct. at 2413. The Court found the Pennsylvania Act constitutional: the legislature "simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm." *Id.* at 89–90, 106 S.Ct. at 2418.

We considered a similar challenge in *United States v. Reynolds*, 900 F.2d 1000, 1002–03 (7th Cir.1990). In *Reynolds*, the defendant was charged under 21 U.S.C. § 846. Section 846 makes it illegal to conspire to violate § 841; the Sentencing Guidelines (§ 2D1.1) provide the applicable sentences for violations of § 846. Section 2D1.1 replaced sentencing under 21 U.S.C. § 841(b) for violations of § 846. Under § 2D1.1, sentencing is largely dependent upon the type and quantity of drugs involved. The sentencing judge is required to find the amount of drugs involved by a

preponderance of the evidence. Reynolds argued that § 2D1.1 is unconstitutional because it creates an element of the offense under § 846. *Id.* at 1003.

Relying on prior caselaw, we found that § 2D1.1, like § 841(b), is "an enhanced penalty provision rather than a separate substantive offense." *Id.* (citing *United States v. Acevedo*, 891 F.2d 607, 611 (7th Cir.1989) and *United States v. Ocampo*, 890 F.2d 1363, 1372 (7th Cir.1989)). Therefore, the question of amount need not be submitted to the jury. It is a question for the judge to be determined by a preponderance of the evidence at sentencing. We noted however, that "there are constitutional limits upon the government's power to dictate the burden of proof merely by manipulating the definitional elements of the offense...." *Id.* at 1004. In *Reynolds*, we found that the sentencing provisions were constitutional because they did not change the elements for conviction under § 846 or the factors to be considered in sentencing. The amount of narcotics involved in the defendants' activities was always a factor the district court considered at sentencing. The Sentencing Guidelines, like the Pennsylvania Sentencing Act, merely quantify the significance the court should accord amount at sentencing.

■ The disparity between the sentence for the crimes charged in the indictment and the sentence received by the defendant as a result of enhancement provisions must be extreme before due process demands increased scrutiny at sentencing. The sentencing-hearing tail must wag the substantive-offense dog in order for the preponderance of the evidence standard to violate due process. *United States v. Kikumura*, 918 F.2d 1084, 1100 (3d Cir.1990). In *Kikumura*, the district court's findings at the sentencing hearing increased the defendant's sentence from thirty months to thirty *years*—a twenty-two level increase in his offense level under the Guidelines. *Id.* at 1100. The Third Circuit found that "[i]n this extreme context, ... a court cannot reflexively apply the truncated procedures that are perfectly adequate for all of the more mundane, familiar sentencing deter-

minations." *Id.* at 1101. It held that in such circumstances, the enhancement factors must be proven by clear and convincing evidence. *Id.* We noted the *Kikumura* holding with approval in *Schuster*, 948 F.2d at 315.

■ Trujillo argues that he knowingly possessed an amount less than the six kilos Rios delivered to him in the duffel bag. He does not specify the amount, but let us assume this lesser amount was between 500 grams and 2 kilograms. We base this assumption in part upon some indications in the taped conversations that Trujillo might want to examine a one-kilo sample before accepting delivery of the rest of his order. The base offense level for possession of this quantity of cocaine under § 2D1.1 is 26. Given Trujillo's criminal history category (IV), the applicable sentence would be 92 to 115 months. With the six-kilogram quantity, the base offense level is elevated to 32, and the applicable sentence is 168 to 210 months. Trujillo received the minimum sentence under the second range—168 months. The difference between the maximum sentence for the lesser amount and the sentence he received is 53 months, or approximately 4.5 years. Moreover, this is only a six-level increase, compared to the twenty-two level increase at issue in *Kikumura*. Although not insignificant, this difference is not so extreme or dramatic as to invoke *Kikumura* scrutiny. Even if it were, Trujillo's argument still is unavailing because the district court found beyond a reasonable doubt that he knowingly possessed six kilos of cocaine. Post–Trial Determination as to Application of Sentencing Guidelines, Appellee's Appendix at 1.

■ Based upon his contention that we must construe § 841 to include an amount element in order for the statute to be constitutional, Trujillo also argues that he was entitled to a jury instruction on a lesser included offense. He argues, drawing on *United States v. Pumphrey*, 831 F.2d 307 (D.C.Cir.1987), that the jury should have been instructed that it could find him guilty of the lesser offense of possession of less

than the six kilos charged in the indictment.

In *Pumphrey*, there was a difference between the amount charged in the indictment and the amount proven at trial. The defendants initially were charged with intent to distribute 500 grams or more of PCP in violation of 21 U.S.C. § 841(b)(1)(A)(iii) (1982). *Id.* at 310. When the government was only able to prove the defendants possessed 425 grams of PCP, the court ruled that it was entitled to have lesser included offense submitted to the jury. The lesser offense was possession with intent to distribute under § 841(a). *Id.*

■ *Pumphrey* does not support Trujillo's contention that he was entitled to a lesser included offense instruction, however. As we discussed *supra* at 1382, the rule in this Circuit is that § 841(b) is merely a sentencing enhancement provision, not a separate substantive offense. *Reynolds,* 900 F.2d at 1002.

■ Generally, a defendant is entitled to a lesser included offense instruction if the evidence would permit a rational jury to find the defendant guilty of a lesser offense. *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995–96, 36 L.Ed.2d 844 (1973). But under § 841(a), the elements of the offense are the same regardless of the quantity of drugs involved. Therefore, "the nature and the quantity of the controlled substance are relevant only to sentencing and do not constitute elements of a lesser included offense." *United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989). In *Williams,* the court found that the district court did not err when it refused to give a lesser included offense instruction on amount in a cocaine case. *Id.*

Another defendant in a cocaine possession case made a similar argument: she asserted that the trial court erred when it instructed the jury that the government did not have to prove she possessed the amount of cocaine alleged in the indictment. *United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989). Instead, the court instructed the jury that the government

need only prove that the defendant possessed a measurable amount. We found this instruction was proper because "the quantity of the controlled substance is a sentencing issue unrelated to a defendant's underlying guilt...." *Id.* Because there is no "lesser offense," we find that Trujillo was not entitled to a lesser included offense instruction.

■ Trujillo further argues that special verdict forms are an alternate means of protecting defendants from the due process difficulties he finds inherent in § 841. At trial he offered the following special interrogatory:

> We, the jury finding that Juan Anthony Trujillo is guilty of the offense as charged in the indictment, find that the amount of cocaine which Juan Anthony Trujillo possessed was ___ grams.

Tr. at 454–55. We faced a similar challenge in *United States v. McKenzie,* 922 F.2d 1323, 1327 (7th Cir.), *cert. denied,* ——— U.S. ———, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991), where the defendants argued that the district court committed reversible error by refusing to submit a special verdict form to the jury. The verdict asked the jury, "How many grams of cocaine were possessed with the intent to distribute, were imported, or were distributed by members of the charged conspiracy during its duration?" The defendants argued that the jury was required to make a special finding because only 1,200 grams of cocaine were actually seized during their arrests, although the indictment charged them with conspiracy to possess with intent to distribute in excess of twenty-five kilograms of cocaine. *Id.* at 1326.

In *McKenzie,* we found that no special verdict was needed because the Sixth Amendment only requires that a jury determine questions of guilt or innocence—"punishment is the province of the court." *Id.* at 1327. As we have discussed above, in extreme cases the Due Process Clause of the Fifth Amendment only requires heightened scrutiny at sentencing, not a jury finding of amount. Further, we noted in *McKenzie* that trial courts are given great

deference in matters of sentencing, and their factual findings in sentencing matters are reviewed only for clear error. *See* 18 U.S.C. § 3742(e); *United States v. White,* 903 F.2d 457, 460 (7th Cir.1990).

Similarly, in *United States v. Romo,* 914 F.2d 889, 895 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1078, 112 L.Ed.2d 1183 (1991), the defendants complained about the wording of a special verdict sent to the jury. The verdict requested that the jury determine what amount of cocaine was the " 'object' of the conspiracy, and rather should have asked what amount of cocaine the defendants 'possessed.' " We found the complaint meritless because the sentencing court, not the jury, determines the amount of drugs involved in an offense for purposes of sentencing under § 841(b). Because a district court can completely reject a defendant's proposed special verdict, or submit no form at all, and because the jury's answers to a special verdict are not binding on the sentencing judge, the defendants "are not entitled to particular phrasing in the special verdict form...." *Id.* Based upon these holdings, we find Trujillo was not entitled to a special verdict on the quantity of drugs he possessed.

■ Finally, Trujillo argues that the uncorroborated evidence given by the government informant was inherently unreliable, and, therefore, there was insufficient evidence to establish his guilt beyond a reasonable doubt. In fact, although he has no authority for the proposition, Trujillo states that "It is well established that the testimony of a government informant is inherently unreliable...." Appellant's Br. at 20. When a defendant argues that there was insufficient evidence of his guilt, we review all the evidence in the light most favorable to the government. If we find that any rational jury could have found the defendant guilty, the conviction will be confirmed. *United States v. Jewel,* 947 F.2d 224, 231 (7th Cir.1991).

Trujillo complains that despite the trial judge's instruction to the jury to weigh Rios' testimony carefully, the "jury could not have viewed Rios with the degree of credibility necessary to otherwise convict the defendant." Appellant's Br. at 21. Trujillo challenges Rios' translation of their conversations—he asserts that Rios is a "chronic liar" who would "willingly set up anyone he could find so as to maintain his status as a protected government informer." *Id.* at 21–22. Because of these credibility problems, Trujillo argues that we should find "as a matter of fact and law, [that] the defendant was not found guilty beyond a reasonable doubt." *Id.*

■ Trujillo appears to misapprehend the nature of appellate review. It is not this court's function to reassess a jury's credibility determination. *United States v. Lendmann,* 757 F.2d 916, 919 (7th Cir. 1985). "The jury evidently chose to resolve the credibility issue in favor of the government, and we will not substitute our own determination of the credibility of witnesses for the jury which had an opportunity to observe firsthand the conflicting testimony and the demeanor of the witnesses in question." *United States v. Liefer,* 778 F.2d 1236 (7th Cir.1985). In *Jewel,* we explained that unless testimony is "inherently unbelievable," a guilty verdict may be based on the testimony of a coconspirator testifying pursuant to a plea agreement. 947 F.2d at 232. We believe that a verdict also may be based upon a confidential informant's testimony. *United States v. Grandinetti,* 891 F.2d 1302, 1307 (7th Cir.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1534, 108 L.Ed.2d 773 (1990).

■ Trujillo is not the first defendant to question Angel Rios' credibility as a government informant. Augustin Cervante was also indicted, tried, and convicted as a result of Rios' cooperation with the FBI. *See United States v. Cervante,* 958 F.2d 175 (7th Cir.1992). Cervante argued that Rios "cajoled" him into participating in a cocaine transaction. *Id.* at 180. As we said in *Cervante,* the "jury was entitled to credit Rios' version of the events. We will not disturb the jury's credibility determinations unless it credits exceedingly improbable testimony.... The fact that Angel Rios was not an angel does not render his

testimony incredible as a matter of law." *Id.*

Here there is nothing incredible about Rios' interpretation of his conversations with Trujillo. Indeed, we believe the jury could have understood the tenor of the conversations without Rios' explanations. All of the credibility problems Trujillo points out in his brief were brought to the jury's attention during cross-examination. That Rios benefitted from his role as an FBI informant does not make his testimony "inherently unreliable." *See United States v. Jones,* 950 F.2d 1309, 1315 (7th Cir.1991). Resolving the conflicting testimony in the light most favorable to the government, the jury could have credited Rios' interpretations of the taped conversations, and found that Trujillo agreed to purchase six kilos of cocaine.

### III.

For the foregoing reasons, we affirm Trujillo's conviction.