**UNITED STATES of America**

v.

**Leon HOWARD, Defendant.**

**No. 97–CR–327–001 (LEK).**

United States District Court,
N.D. New York.

Feb. 16, 1999.

Hon. Thomas J. Maroney, United States Attorney, James T. Foley U.S. Courthouse, Albany, NY, for U.S.

Sprotbery & Swingruber, Delmare, NY (Kent B. Sprotbery, Joshua W. Nesbitt, of counsel), for defendant.

*MEMORANDUM–DECISION AND ORDER*

KAHN, District Judge.

On August 10, 1998, defendant Leon Howard ("Howard") pleaded guilty to conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 846. Specifically, Howard pleaded guilty to having participated in the sale of 4.8 grams of cocaine base on March 4, 1997. The question pending is whether the additional 43.5 grams of cocaine and

33.6 grams of cocaine base which were found by law enforcement officers on September 10, 1997 at the residence located at 51 Haigh Avenue ("Haigh residence") are relevant in determining the defendant's sentence. This Court held relevant conduct hearings on November 23, 1998 and January 20, 1999, and reserved decision. After reviewing the witness testimony and the legal memoranda supplied by the parties, the Court finds that the additional narcotics are relevant.

### I. Background

On March 4, 1997, a confidential government informant contacted Jose Alvarado ("Alvarado") about purchasing a quantity of cocaine base (i.e. "crack" cocaine). Alvarado in turn contacted a source for drugs by phone and arranged for the exchange to be made at 145 McClellan Street. Later that day, after Alvarado had arrived at the exchange site, a vehicle pulled up driven by Andre McKinnon ("McKinnon"). The defendant was in the front passenger seat. Alvarado gave the defendant money in exchange for a small package of drugs, and McKinnon and the defendant departed. This exchange was observed by government agents. Alvarado then handed the package to the informant, who subsequently provided it to government agents. It contained 4.8 grams of crack cocaine.

On September 10, 1997, the Drug Enforcement Administration ("DEA") executed a search warrant at 51 Haigh Avenue, Schenectady, New York. The defendant was found in an upstairs bedroom. Under the bed of that room, agents located a scale and a box containing 33.6 grams of crack cocaine and 43.5 grams of cocaine powder.

### II. Burden of Proof

The first issue is the appropriate burden of proof which the Government must satisfy on disputed issues of fact. The Commentary to the Sentencing Guidelines states that "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving in resolving disputes regarding application of the guidelines to the facts of a case." U.S.S.G. § 6A1.3, Commentary. Further, in *U.S. v. Zagari*, 111 F.3d 307 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 445, 139 L.Ed.2d 381 (1997), the Second Circuit held that "the burden of proof for relevant conduct increases ... need only meet the preponderance of the evidence standard, not the higher clear and convincing evidence standard." *Id.* at 323. *See also U.S. v. Ruggiero*, 100 F.3d 284, 290 (2d Cir.1996) (noting that "the Second Circuit has held repeatedly that 'disputed facts relevant to sentencing, even under the Guidelines, need be established only by a preponderance of the evidence.' ") (quoting *U.S. v. Concepcion*, 983 F.2d 369, 388 (2d Cir.1992)).

In *United States v. Shonubi*, 103 F.3d 1085, 1089 (2d Cir.1997), the court stated that "a more rigorous standard [than the preponderance-of-the-evidence standard] should be used in determining disputed aspects of relevant conduct where such conduct, if proven, will significantly enhance a sentence." *Id.* at 1089. At least two courts in the Circuit have found this statement in *Shonubi* to be controlling in applicable situations. *See United States v. Murgas*, 31 F.Supp.2d 245 (N.D.N.Y.1998) (Munson, J.) (applying "clear and convincing evidence" standard to relevant conduct determination where additional conduct increased potential sentence to life imprisonment); *United States v. Gamez*, 1 F.Supp.2d 176, 182 (E.D.N.Y.1998) (finding that the court of appeals for the Second Circuit requires "somewhat heavier standard" than preponderance when issue could "substantially enhance" the penalty). However, assuming that this language, which was dicta in *Shonubi*, should be followed in applicable situations, the Second Circuit has confirmed that to be considered significant enough to trigger a heavier burden of proof, relevant conduct

increases must be such that their effect "can fairly be characterized as 'a tail which wags the dog of the substantive offense.'" *Ruggiero*, 100 F.3d at 290 (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). In *Ruggiero*, the court noted that an increase in sentencing range from a range of 27–33 months to 188–200 months did not constitute such a situation. *Id.* at 291. This conclusion is consistent with the case law of the other circuits, which have required extreme disproportionality between the effect on sentencing of the offense conduct and the effect of the additional sentencing enhancements. *U.S. v. Restrepo*, 946 F.2d 654, 659 (9th Cir.1991) (finding that *McMillan* recognized heavier burden may apply "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction.") (citing *McMillan*, 477 U.S. at 87–91, 106 S.Ct. 2411); *see also U.S. v. Kikumura*, 918 F.2d 1084, 1100–01 (3d Cir.1990) (holding "clear and convincing evidence" standard applicable where findings would increase sentence from about 30 months to 30 years, the equivalent of an increase of twenty-two offense levels, and reaffirming that four-level increase does not trigger higher standard); *United States v. Townley*, 929 F.2d 365, 370 (8th Cir.1991) (finding heightened standard may be applicable where relevant conduct added 6,000 grams of cocaine to the 27 grams involved in the charge, producing an 18–level increase in the base offense level and a seven-fold increase in the permissible sentencing range); *see also U.S. v. Lam Kwong–Wah*, 966 F.2d 682, 688 (D.C.Cir.1992) (6–level increase, which roughly double sentencing minima and maxima, did not trigger heavier burden); *U.S. v. Trujillo*, 959 F.2d 1377, 1382 (7th Cir.1992) (same).

In this case, the quantity of drugs under consideration as relevant conduct would subject the defendant to a six-level increase in his offense level. However, because the defendant has affirmatively denied being in possession of the drugs, a finding that the defendant was in possession of the drugs found at the Haigh residence would also result in the loss of a three-level downward departure for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, Application Notes 1(a) ("a defendant who falsely denies ... relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility"). Thus, the difference in offense level based on a ruling against the defendant on this issue is nine, not six.

The result of the nine level increase is to increase the range from 37–46 months to 97–121 months. Although this Court is of the personal opinion that this increase is significant, the Court finds that under *Ruggiero*, it is clearly insufficient to trigger the heavier burden of proof. Accordingly, this Court must apply the preponderance-of-the-evidence standard to determine whether the Government has proved that the narcotics seized at 51 Haigh Avenue are relevant to determining the defendant's sentence.

### III. Relevant Conduct in a Narcotics Offense

■ Under U.S.S.G. § 1B1.3(a)(2), the base offense level of a defendant convicted of a narcotics offense is determined by all acts and omissions that are "part of the same course of conduct or common scheme or plan as the offense of conviction." Under this standard, conduct relevant to sentencing "includes all of the additional drugs, beyond the quantity in the offense of conviction, that were unlawfully distributed or possessed with intent to distribute either by the defendant personally or by the reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity." *Shonubi*, 103 F.3d at 1089. Thus, the Government must prove by a preponderance of the evidence that the narcotics found at the Haigh residence were possessed by the defendant with intent to distribute. In addition, the Second Circuit requires "evidence that points spe-

cifically to a drug quantity for which the defendant is responsible." *Id.*, 103 F.3d at 1090.

The testimony provides sufficient evidence that the defendant was engaged in the sale of cocaine over a period of time leading up to his arrest. McKinnon testified that around March 4, 1998, he was aware that the defendant was selling drugs in order to get back "on his feet" while he was out of work. Trans. at 22.[1] He testified that the defendant had been selling drugs for "approximately a month or two," Trans. at 24, and that he had previously seen the defendant in possession of cocaine and cocaine base. Alvarado testified that sometime "around" March 4, 1998, McKinnon had introduced the defendant to him as someone who could sell him crack cocaine. Trans. at 33, 37. This Court finds that the defendant was engaged in a course of conduct over a period of at least a month involving the possession of narcotics with intent to distribute.

The Court also finds that the defendant was a resident of the house at 51 Haigh Avenue and regularly spent time there. Although Julie Wilder ("Wilder") testified that during the summer of 1997, the defendant was spending at least four days a week at her house at 32 Robinson Street, Wilder also testified that for the nine years during which she knew him, she would call the number at the Haigh residence to reach him on those days when he wasn't at her house. Trans. at 70. She further stated that, although the defendant spent the night before the September 10 arrest at her house, he returned to the Haigh residence around noon to take a shower, evidencing the fact that he returned to the Haigh residence to perform this regular hygienic task. Trans. at 66.

In addition, the defendant's parents, John Howard and Verdie R. David Howard, both testified that the defendant was living at the Haigh residence. Trans. at 59, 61. The Haigh address is present on the defendant's drivers license, *see* Trans. at 15, and is the first address which the defendant provided to the U.S. Probation Office as his legal address. *See* Nesbitt Mem.Exh. Prob 5/94. The Court concludes that the Haigh residence was defendant's permanent home at all relevant times, notwithstanding the fact that he spent many of his days at another house.

Given that he was one of the permanent residents of the Haigh house, the Court finds that the bedroom in which he was found alone by arresting officers on September 10, 1997, and in which the narcotics were located, was more likely than not his personal bedroom. Further, in light of the conclusion that the defendant was engaged in the sale of cocaine over a period of time and considering the testimony of Wilder that she did not recall any drugs being kept at her house, the Court is persuaded that the Government has proved under the lenient preponderance-of-the-evidence standard that the narcotics under the defendant's bed at the Haigh residence belonged to him and were possessed by him for the purpose of distribution.[2] Further, because the precise amount of the narcotics in question is not in dispute, the Court finds that the requirement of specific evidence of quantity is clearly satisfied.

Accordingly, it is hereby

ORDERED that the narcotics seized on September 10, 1997 at 51 Haigh Avenue be aggregated with the narcotics of which he was convicted of possessing for purposes of determining his sentence; and it is further

ORDERED that the Clerk serve copy of this order on all parties by regular mail.

IT IS SO ORDERED.

---

1. The transcripts of the November 23, 1998 hearing and the January 20, 1999 hearing will be referred to as "Trans." and "2d Trans." respectively.

2. The Court makes no determination as to whether this evidence would satisfy any heavier burden of proof, such as the "clear and convincing evidence" standard.