**UNITED STATES of America,**
**Appellee,**

v.

**Cuong NGUYEN, Appellant.**

**No. 00–3852.**

United States Court of Appeals,
Sixth Circuit.

Sept. 13, 2001.

Before CLAY and GILMAN, Circuit Judges; and WISEMAN, Senior District Judge.*

WISEMAN, Senior District Judge.

Cuong Nguyen ("Appellant" or "Defendant") appeals the duration of his sixteen month sentence following his guilty plea conviction for one count of aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344 and 2.

On appeal, Appellant raises three allegations of error, all in relation to the imposition of his sentence. First, Appellant claims the district court erred in applying a preponderance of the evidence standard instead of a heightened clear and convincing standard of proof to contested facts at sentencing. Second, Appellant claims there was insufficient evidence of loss amount presented at sentencing to support the eight level sentence enhancement for

---

* The Honorable Thomas A. Wiseman, Jr., Senior Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

the amount of loss applied by the district court. Finally, Appellant argues that the evidence was insufficient to support the district court's application of a three level sentence enhancement for Appellant's leadership role. The United States of America ("Appellee" or "government") responds that the district court did not err, and requests that the Appellant's sentence be affirmed on all grounds.

For the reasons set forth below, the holdings of the district court are AFFIRMED.

## I.

Appellant was indicted by a federal grand jury on June 2, 1999, on one count of aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. On August 4, 1999, the federal grand jury handed down a superseding indictment, naming Appellant in thirty-nine separate counts of bank fraud. Appellant pleaded guilty on October 6, 1999, to count six of the superseding indictment for aiding and abetting bank fraud in the amount of $947.15.

Following an evidentiary hearing, the court determined that Appellant was responsible for $201,990.61 in losses to various Cincinnati financial institutions, and as a result enhanced Appellant's sentence by eight levels pursuant to United States Sentencing Guidelines ("USSG" or "Guidelines") § 2F1.1(b)(1)(l). The court also imposed a three-level enhancement for Appellant's managerial role pursuant to USSG § 3B1.1(b). The court then granted a three-level downward adjustment for acceptance of responsibility, thereby yielding an adjusted offense level of sixteen. Because the court found that the government failed to timely provide materials requested by Appellant in discovery, and because Appellant was forced to wait for sentencing due to the period of time the government took in preparing its sentencing memorandum, the court granted a five-month downward departure in the sentence. Accordingly, on June 20, 2000, Appellant was sentenced to sixteen months imprisonment, was fined $5,000, and was ordered to pay restitution in the amount of $201,990.61. Appellant thereafter filed this timely notice of appeal.

## II.

At the sentence evidentiary hearing, the government presented a single witness, F.B.I. Special Agent Drake ("Agent"). Agent's testimony was based upon his investigation of the larger check counterfeiting scheme, including interviews with co-defendants and cooperating witnesses. Agent testified about Appellant's activities in the bank fraud scheme, including his recruitment of individuals to cash counterfeit checks, Appellant's provision of counterfeit checks to other participants and his collection of the proceeds from these counterfeit checks, and Appellant's involvement in the shipment of false identifications and other items related to the counterfeiting operation.

In addition to Appellant, Agent identified six individuals as participants in the counterfeit check cashing scheme: Thanh Troung ("Troung"), Thien Nguyen ("Thien"), Vinh Nguyen ("Vinh"), Minh Nguyen ("Minh"), and two unidentified subjects known under the aliases of Peter Deawon Kim ("Kim") and Ve D. Phu ("Phu"). Agent's testimony concerning the counterfeit checks cashed by these six participants is summarized as follows:

| Participant | # of counterfeit checks cashed | total loss to financial institutions |
|---|---|---|
| Troung | 46 | $ 42,829.33 |
| Thien | 32 | $ 26,356.60 |
| Vinh | 36 | $ 33,424.95 |
| Minh | 52 | $ 54,621.05 |
| Kim | 35 | $ 30,255.68 |
| Phu | 14 | $ 14,503.00 |
| | Total Loss: | $201,990.61 |

The government connected Appellant to these checks through further testimony of Agent. Agent testified that Troung, assisting the government as part of a plea agreement, identified Appellant as the person who recruited him to cash counterfeit checks and as the person who provided the counterfeit checks to him. Troung also indicated to Agent that he saw Appellant give counterfeit checks to both Thien and Minh. Agent further testified that Vinh told Agent that Appellant had recruited him to cash counterfeit checks, had provided Vinh with counterfeit checks, and had received the proceeds from the cashed checks from Vinh. Agent also testified as to fingerprint analysis on some of the recovered counterfeit checks. One of Appellant's fingerprints was identified on individual checks cashed by Troung, Vinh, Minh, and Phu. Two fingerprints were found on a check cashed by Minh. One of Appellant's fingerprints was also found on an uncashed counterfeit check found in a car driven by Appellant.

Agent presented evidence showing similarities between checks cashed by various participants of the scheme. He also testified that some of the checks cashed by Phu were very similar to checks cashed by Kim using an identification card found in the possession of the Appellant.

Finally, Agent testified about a package, sent by Appellant to California, in which items associated with the counterfeit check cashing scheme were found. These items included an original legal check drawn on an account used by Troung to cash counterfeit checks, the name and address of Vinh Nguyen, a bank statement from a bank to "Peter Kim", a social security card and a resident alien card in the name of Ve. D. Phu presenting the same identification numbers used when seven of the above mentioned counterfeit checks were cashed, a legitimate check payable on an account of a company used to cash counterfeit checks, and an Ohio identification card, a resident alien card and a social security card all in the name of Minh Nguyen.

Pursuant to this evidence of Appellant's involvement in the check cashing scheme, the government alleged that Appellant was individually responsible for all 215 of the cashed counterfeit checks and that he was a leader in the counterfeiting scheme. Alleging a total loss to Cincinnati area financial institutions of $201,990.61, the government recommended a fourteen level sentence enhancement.

At the evidentiary hearing, Defendant sought to discredit the source of a large portion of Agent's information, co-defendant Troung. He introduced prior inconsistent statements of Troung contradicting some of Troung's statements as reported by Agent. Defendant additionally sought to impeach Troung through the introduction of Troung's misrepresentation before the court regarding another proceeding involving a felony child abuse conviction of Troung in Texas. Defendant also attempted to discredit the reliability of Troung's statement to Agent by suggesting a strong bias because of the substantial benefit Troung received in his plea agreement.

In addition, Defendant filed a motion before the district court, wherein he requested that the court apply the clear and convincing standard of proof at sentencing. Ruling on Defendant's motion, the district court opined:

Mr. Nguyen has filed a motion ... and in that motion he asks the Court to consider all of the enhancements to his sentence pursuant to a clear and convincing standard of proof, rather than the preponderance of the evidence standard applied to other factual findings at sentencing.... The Court is not persuaded that the clear and convincing

standard applies in this circuit. *United States versus Carroll,* which is a Sixth Circuit case, at 893 F.2d 1502, at page 1506, supports this conclusion.

I recognize that other circuits have applied a clear and convincing standard of proof, but that was done in those cases in the context of a dramatic enhancement, which is not contemplated in this case in any event. I have looked at *United States versus Kikamura,*[1] and I think that is the correct reading of that case. *I will say, however, the findings with regard to the enhancements to the defendant's offense level, in this situation, in this case, would be the same under either standard.*

(Emphasis added.) Accordingly, the defendant's motion is denied, and it is also moot.

In its sentencing order, the district court presented detailed findings in support of the court's determination that Appellant was responsible for $201,990.61 in loss and was an organizer or manager in the counterfeiting scheme. Based upon the evidence before it, the district court sentenced Appellant to sixteen months imprisonment.

### III.

Appellant first claims the district court erred in applying a preponderance of the evidence standard instead of a heightened clear and convincing standard of proof to contested facts at sentencing. Appellant argues that the Due Process Clause of the Fifth Amendment of the United States Constitution requires that the district court hold the government to the heightened clear and convincing standard of proof because the Guideline enhancements applied by the district court dramatically increased his sentence. The government argues that the district court properly applied the preponderance of the evidence standard.

As the record indicates, the sentencing court noted in its detailed findings that several circuits have supported the use of a clear and convincing standard of proof in the context of dramatic sentence enhancements,[2] but this circuit has held the preponderance of the evidence standard to be the correct and appropriate standard for sentencing under the Guidelines. *United States v. Carroll,* 893 F.2d 1502, 1506, (6th Cir.1990). Even so, the sentencing court applied both standards to the enhancement facts before it expressly stating that "the court's findings with regard to the enhancements to the Defendant's offense level would be the same under either [a preponderance or clear and convincing] standard ."

1. Referring to *United States v. Kikumura,* 918 F.2d 1084, 1100 (3rd Cir.1990).

2. *See e.g. United States v. Townley,* 929 F.2d 365, 369 (8th Cir.1991)(suggesting the possibility of applying a heightened standard for an eighteen-level enhancement but remanding for resentencing due to Government's lack of even a preponderance of proof supporting such an enhancement); *United States v. Kikumura,* 918 F.2d 1084, 1102 (3rd Cir.1990)(applying the clear and convincing standard to a sentencing court's upward departure of 327 months-more than ten times the guideline maximum). *See also United States v. Trujillo,* 959 F.2d 1377, 1382 (7th Cir.)(suggesting that clear and convincing evidence might be required for extraordinary upward adjustments or departures), *cert. denied,* 506 U.S. 897, 113 S.Ct. 277, 121 L.Ed.2d 204 (1992); *United States v. Restrepo,* 946 F.2d 654 (9th Cir.) (same), *cert denied* 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); *United States v. Lam Kwong–Wah,* 966 F.2d 682, 688 (D.C.Cir.) (same), *cert. denied* 506 U.S. 901, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992). *But see United States v. Washington,* 11 F.3d 1510, 1516 (10th Cir.)(holding "at least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit"), *cert. denied* 511 U.S. 1020, 114 S.Ct. 1404, 128 L.Ed.2d 76(1994).

Therefore, because the sentencing court did apply the clear and convincing standard of proof at sentencing, Appellant's claim that the sentencing court erred in failing to apply a clear and convincing standard is moot. Furthermore, because the court did apply this standard, Appellant has no redressable injury. *See Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988)(stating that for a federal court to have jurisdiction under Article III, an on-going controversy must exist, and "[i]t is not enough that a controversy existed at the time the complaint was filed.")

### IV.

■ Appellant next argues that the eight level enhancement for amount of loss was not sufficiently supported by the evidence because it was based upon the inclusion of losses from counterfeit checks other than those described in the one count of bank fraud to which he pled guilty. We review a sentencing court's factual findings for clear error, but when the facts are undisputed, the question of whether the court appropriately applied the Guidelines to a particular set of facts is reviewed *de novo. United States v. Tilford,* 224 F.3d 865, 867 (6th Cir.2000). Because Appellant contests the factual findings of the sentencing court, our review is for clear error. A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *See United States v. Didonato,* 109 F.3d 318, 320 (6th Cir.1997).

■ Appellant claims that the government failed to present sufficient and reliable factual information upon which the district court could attribute $201,990.61 in losses to him. Specifically, Appellant argues that the government's evidence as presented through the testimony of a single witness, the F.B.I. Agent, was insufficient, unreliable, and hearsay-laden because it contained statements provided by Troung who was assisting the government pursuant to a plea agreement.

Appellant relies on *Lilly v. Virginia* for the proposition that "when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect." 527 U.S. 116, 130, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). This reliance on *Lilly* is misplaced in that *Lilly* dealt with the admissibility of hearsay evidence containing an out of court declarant's accusation that the defendant committed a particular crime in the context of the defendant's right under the Confrontation clause to cross-examine the out of court declarant. In *Silverman,* this Court stated:

> when defendants have pleaded guilty, as in this case, sentencing does not mandate confrontation and cross-examination on information submitted to the court through the presentence reports and law enforcement sources. Following the mandates of Fed.R.Crim.P. 32 is constitutionally sufficient because they are fundamentally fair and afford the defendant adequate due process protections.

*United States v. Silverman,* 976 F.2d 1502, 1510 (6th Cir.1992). Rule 32(c)(3)(A) affords defendants the opportunity "to introduce testimony or other information" at the sentencing hearing.

■ Moreover, this Court has acknowledged the wide discretion allowed a trial judge in considering evidence submitted at sentencing. *Silverman,* 976 F.2d at 1508. The sentencing court's use of hearsay information has traditionally been almost unlimited. *Id.* at 1509. Indeed, the

Federal Rules of evidence do not even apply in sentencing proceedings. Fed. R.Evid. 1101(d)(3). Thus, hearsay evidence is admissible in sentencing proceedings. *United States v. Davis,* 170 F.3d 617, 622 (6th Cir.1999). While the district court may consider hearsay evidence in determining sentence, but the accused must, however, be given an opportunity to refute it, and the evidence must bear some minimal indicia of reliability in respect of defendant's due process rights. *Silverman,* at 1512.

At the sentencing evidentiary hearing, Appellant had the opportunity to refute the government's offered proof. Indeed, Appellant sought to discredit the source of a large portion of Agent's information, codefendant Troung, through the introduction of prior inconsistent statements, alleged misrepresentations, and possible biases.

In its detailed factual findings, the district court clearly indicated its consideration of the weight and relevance of all of the evidence and of the credibility of witnesses in the court's determination that $201,990.61 in loss was attributable to Appellant. As part of its findings the district court stated that:

> [the] evidence of Appellant's provision of counterfeit checks to Troung and Appellant's receipt of the proceeds was uncontradicted and the court was thus persuaded by Troung's statements to Agent that the loss resulting from Troung's activities was attributable to Appellant ... Testimony by Minh contradicting testimony of Troung about Appellant's supplying counterfeit checks to Kim, Vinh and Minh was less credible than statements by Thang; and Troung's statements coupled with the presence of Appellant's fingerprints on six checks further supported attributing the losses from checks passed by Kim, Vinh and

Minh to Appellant.... The court found Appellant's statement that he did not know what was in the package [he sent to California] to be incredible.

Based upon the evidence in the record and the detailed findings issued by the district court at sentencing, we are not left with the definite and firm conviction that a mistake has been committed. Thus, Appellant's eight level sentence enhancement for an amount of loss totaling $201,990.61 pursuant to § 2F1.1(b)(1) was not clear error.

## V.

Finally, Appellant argues that the district court erred in its application of a three level enhancement to his offense level for a leadership role. Again, we review the factual findings of the district court under a clearly erroneous standard. *Tilford,* 224 F.3d at 867.

Appellant claims that the finding of the district court that the evidence presented regarding leadership was "equivocal" does not meet the preponderance of the evidence standard required under the Guidelines. The evidence, Appellant asserts, is insufficient to hold him to a leadership position. Appellant's claim is without merit.

The district court's enhancement of Appellant's sentence for a leadership role was not based upon a finding that Appellant was a leader or organizer. The enhancement was instead based on the district court's finding that Appellant was "at least a supervisor or manager of the criminal activity." In response to the government's recommendation of a four level leadership enhancement under USSG § 3B1.1(a), the district court's factual findings indicate it found little evidence in the record concerning leadership and organization and that "the evidence presented is equivocal. *Id.* The court, however, used this description of the evidence as explanation for imposing

only a three level enhancement for a supervisory or managerial role in criminal activity. While the district court made no specific reference to § 3B.1.1(b), its three level enhancement for supervision or management is consistent with this section of the Guidelines.[3]

■ The same evidence found sufficient to uphold Appellant's eight level sentence enhancement for amount of loss is also sufficient to support the district court's finding that Appellant had a supervisory or managerial role in the check cashing scheme. Appellant recruited individuals to participate in the illegal scheme, provided counterfeit checks to them, and collected proceeds from those checks. Appellant's fingerprints were found on some ·of the counterfeit checks cashed by other participants and the package he sent to California contained incriminating counterfeiting paraphernalia. This evidence sufficiently supports the district court's finding that Appellant was a supervisor or manager in a counterfeit check cashing scheme which involved more than five participants. The district court's three level leadership enhancement pursuant to USSG § 3.B1.1(b) was, therefore, not clear error.

### VI.

Based on the foregoing, Appellant's sentence is AFFIRMED.

---

**3.** § 3.B1.1(b) states "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."