UNITED STATES of America,
Plaintiff–Appellee,
Cross–Appellant,

v.

Nick P. REYNOLDS,
Defendant–Appellant,
Cross–Appellee.

Nos. 89–2258, 89–2430.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1990.

Decided April 13, 1990.

As Amended April 16, 1990.

Joseph R. Wall, Francis D. Schmitz, Asst. U.S. Attys., Milwaukee, Wis., for plaintiff-appellee cross-appellant.

Thomas E. Brown, Marna M. Tess–Mattner, Jeffrey A. Kaufman, Gimbel, Reilly,

Guerin & Brown, Milwaukee, Wis., for defendant-appellant cross-appellee.

Before BAUER, Chief Judge, and CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the judgment in a criminal case where the sentence was imposed pursuant to the Sentencing Guidelines. Defendant Nick P. Reynolds challenges the constitutionality of § 2D1.1 of the Guidelines as applied to a conspiracy charge under 21 U.S.C. § 846. The government appeals the district court's grant of a two point reduction in offense level for acceptance of responsibility. We find the application of § 2D1.1 constitutional, but find the district court erroneous in granting a reduction for acceptance of responsibility. Accordingly, we vacate the sentence, and remand for resentencing.

## I.

Beginning in the spring of 1988, and lasting until December of 1988, Nick Reynolds engaged in selling cocaine to his friend, Royal Warrington. Warrington, in turn, sold the cocaine to Lisa White Komanekin, who in turn sold the cocaine on or near the Monominee Indian Reservation in Shawano County, Wisconsin. Warrington and Komanekin were arrested and both turned informant. On the basis of their testimony, Reynolds was arrested and charged with distribution of two ounces of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. After a three day trial, Reynolds was convicted. Prior to sentencing, Reynolds raised a number of objections to the presentence report, including objections to the amount of cocaine used in the Guideline calculations and to the denial of an adjustment for acceptance of responsibility pursuant to § 3E1.1 of the Guidelines.

Reynolds' objection to the amount of cocaine used in the Guideline calculations was based on the disparity between the amount of cocaine he was convicted for and the amount used to calculate his sentence. Although Reynolds was convicted of distributing two ounces of cocaine (56 grams), the government maintained that ample evidence existed to sentence Reynolds for transactions involving 300 to 399 grams of cocaine, which would yield a base offense level of 20. Reynolds argued that based on the amount for which he was convicted, the amount included in the Guidelines should be under 100 grams, so that the proper base offense level should be 16.

The evidence at trial concerning the amounts of cocaine was varied. Warrington testified that he purchased cocaine from Reynolds on a number of occasions in various amounts. According to Warrington's testimony, the first time that he purchased cocaine from Reynolds was on Memorial Day, 1988, when he bought approximately one-quarter of a pound. Immediately after his arrest in November, 1988, however, Warrington told authorities that on that occasion Reynolds had sold him only one-quarter of an ounce. Warrington was uncertain as to the number of times he had purchased cocaine from Reynolds after this incident, but testified that he usually purchased one-half to two ounce quantities of cocaine. Again, this is contradicted by Warrington's post-arrest interview and grand jury testimony that he had purchased one-quarter ounce quantities from Reynolds. Lisa Komanekin also testified that Reynolds sold cocaine, but her testimony was sketchy. She did not directly purchase cocaine from Reynolds, but testified that she had seen Warrington purchase various small amounts from Reynolds. Finally, the government seized approximately 336 grams of cocaine from Warrington. It is known that Reynolds supplied Warrington with cocaine, but it is not known whether Warrington had a second source of supply or whether Reynolds supplied him with all of this cocaine.

The government contended that this evidence was sufficient for finding that the quantity of cocaine involved was 336 grams. The court largely accepted the government's argument; based on the length of the conspiracy, and the inaccuracy of the actual drug quantities seized and

measured, the court found that there was sufficient evidence to sentence the defendant for the distribution of 200–299 grams of cocaine, which placed the defendant's base offense level at 20. The government proved that Reynolds distributed this amount by a preponderance of the evidence standard, but it did not prove this beyond a reasonable doubt.

Reynolds also argued that he should be given a two point reduction for acceptance of responsibility. The pre-sentence report indicated that he should not receive such a reduction on the basis that Reynolds continued, after conviction, to deny his guilt under Count Two of the indictment for possession with intent to distribute two ounces of cocaine. The government attempted to buttress the report's findings by maintaining that the defendant was not entitled to a two point reduction for acceptance of responsibility because Reynolds attempted to obstruct the proceedings [1] and because Reynolds did not in fact accept responsibility. The government contended that reduction was prohibited by note 4 of Guideline 3E1.1 which, it claimed, precluded a reduction for acceptance of responsibility where the defendant also obstructs the proceedings. In addition, the government vigorously argued that Reynolds was not actually remorseful and that he did not voluntarily assist the government in other investigations.

The court rejected the presentence report and the government's arguments, finding that Reynolds was entitled to a two point reduction based on his withdrawal from criminal activity, and "significant alteration in terms of his lifestyle, where he resided, at work, and so forth." The court, however, stated that it was uncomfortable with a two point reduction, feeling that only a one point reduction was warranted. Under the present Guideline structure the only available adjustment is a two point reduction and the court determined that it "would rather err in the interests of the defendant" by over-adjusting in the point level and compensating for the over-adjustment by sentencing the defendant at or near the top of the lower Guideline range than err against the defendant.

The reduction for acceptance of responsibility placed Reynolds' level at 18. The court also found that Reynolds obstructed the proceedings, which gave Reynolds a two point enhancement, leaving his level at 20. The sentencing range for level 20 with a criminal history category I is 33–41 months. The court sentenced Reynolds to forty months in prison. Reynolds appeals the constitutionality of § 2D1.1 of the Guidelines as applied to a conspiracy charge under 21 U.S.C. § 846, and the government appeals the two point reduction for acceptance of responsibility.

## II.

A. The Constitutionality of § 2D1.1 as Applied to 21 U.S.C. § 846

It is well established that the prosecution must prove beyond a reason-

---

1. The finding of obstruction of justice is based on the following facts. On November 4, 1988, Warrington and Komanekin were arrested while conducting a cocaine deal. Both entered into plea agreements with the government and agreed to help the government with its drug investigations. Pursuant to the agreement, Warrington maintained his relationship with Reynolds. After Warrington's arrest, Reynolds telephoned Warrington's home to ask about Warrington's well being. Later, Warrington and Reynolds arranged to meet in Green Bay, Wisconsin. At the meeting, Reynolds asked Warrington how he was doing, whether he was able to meet his bail, and whether Warrington would be able to pay Reynolds the $2,800 for the cocaine in his possession at the time of his arrest. Warrington did not know when he could repay Reynolds.

On December 21, 1988, Warrington, wearing a transmitter, again met with Reynolds. Warrington had been given $2,000 from the DEA to give Reynolds as part payment from the November deal, but Warrington never offered it to Reynolds. They discussed, as they had done in more hypothetical terms prior to Warrington's arrest, what Warrington would say to the police, and whether he would "roll over" and tell what he knew about the drug operations. Warrington said Reynolds seemed "nervous" and "afraid." Reynolds indicated that certain people were inquiring about Warrington, and whether he would "roll over." Reynolds told Warrington that he hoped that he would be a "stand-up" guy. After indicating on a number of previous occasions that he wanted to help Warrington with his legal costs, Reynolds handed Warrington $1,000 in cash to help him pay for his defense.

able doubt all facts constituting the crime charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). While the due process clause requires the prosecution to prove beyond a reasonable doubt all the elements of the charged offense, the prosecution need not prove beyond a reasonable doubt exculpatory or mitigating facts which affect the severity of the punishment. *Patterson v. New York*, 432 U.S. 197, 207, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). The government is not without constitutional limits on its power to dictate the burden of proof merely by manipulating the definitional elements of the offense and sentencing factors, *see Jones v. Thieret*, 846 F.2d 457, 462 (7th Cir.1988), but in determining which facts the prosecution must prove beyond a reasonable doubt, the definition of the elements of the offense is usually dispositive. *McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415, 91 L.Ed.2d 67 (1986).

Reynolds contends that § 2D1.1 creates an element of the offense under 21 U.S.C. § 846 which must be proven beyond a reasonable doubt. Section 846 makes it illegal to conspire to violate § 841, which outlaws possession of cocaine with intent to distribute. No overt act is required under § 846. Under pre-Guideline sentencing, § 846 called for identical penalties as those under § 841, which includes various enhancement provisions depending on the quantity and type of narcotic. In our case, § 841(b)(1)(C) would provide for a sentence of not more than 20 years. Under this section the judge was entitled to consider the quantity of narcotics which were to be distributed, but an exact determination was not necessary. Penalties for violation of § 846 are now calculated in accordance with § 2D1.1 of the Guidelines. Under § 2D1.1, sentencing for violation of § 846 is largely determined by the quantity of drugs involved and the type of narcotic as outlined in § 2D1.1(c). Under § 2D1.1(c), the judge is required to make a finding of the approximate amount of drugs involved in order to apply the Guidelines. It is this finding, which was not necessary in pre-Guideline sentencing, that Reynolds claims

is an additional element of § 846 which must be proven beyond a reasonable doubt.

In *United States v. Acevedo*, 891 F.2d 607, 611 (7th Cir.1989), we held that § 841(b), much like § 2D1.1, is an enhanced penalty provision rather than a separate substantive offense. *See also United States v. Ocampo*, 890 F.2d 1363, 1372 (7th Cir.1989). Section 841(b) provides for additional penalties based on the quantity of narcotics involved in the transaction. *Acevedo*, therefore, would appear to decide the issue; both our case and *Acevedo* involve conviction based on a quantity of narcotics proved beyond a reasonable doubt, and sentencing based on a quantity of narcotics proved by a preponderance of the evidence. Reynolds argues, however, that there is a key difference between conspiracy under § 846 and possession under § 841: under § 841 proof of the amount possessed (or at least that some amount was possessed) is a necessary element of the crime under the statute and therefore the Guidelines do not add a new element to § 841. Under § 846, no proof of any amount possessed is required and therefore the Guidelines do add a new element.

Reynolds' argument, however, is foreclosed by *McMillan*. In *McMillan*, as here, the defendant argued that the possession of the firearm was an element of the offense and therefore must be proven beyond a reasonable doubt. 477 U.S. at 83, 106 S.Ct. at 2414. The Supreme Court rejected that conclusion by looking to the plain wording of the criminal statute defining the offense: the statute did not include firearm possession as an element. In finding such an allocation scheme constitutionally permissible, the Court took special note that the enhancement provision did not "relieve the prosecution of its burden of proof" and "only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished." *Id.* at 87, 106 S.Ct. at 2416. The Court reasoned that:

§ 9712's enumerated felonies retain the same elements they had before the Mandatory Minimum Sentencing Act was passed. The Pennsylvania Legislature

did not change the definition of any existing offense. It simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm. Pennsylvania's decision to do so has not transformed against its will a sentencing factor into an "element" of some hypothetical "offense."

*Id.* at 89–90, 106 S.Ct. at 2417–18. This reasoning is directly applicable here. The Guidelines did not change or add any element of the offense. They merely make more precise the weight afforded the quantity of narcotics during sentencing. The government still need not prove any specific amount to convict a defendant of violation § 846 and the sentencing court does not consider any factors that it did not consider prior to the Guidelines.[2]

We are mindful that there are constitutional limits upon the government's power to dictate the burden of proof merely by manipulating the definitional elements of the offense, *see Thieret*, 846 F.2d at 462, but in this case, the Guidelines have not changed the elements for conviction under § 846 or the factors to be considered in sentencing for violating § 846 under § 841(b). We conclude, therefore, that § 2D1.1 is constitutional as applied to 21 U.S.C. § 846.

## B. Acceptance of Responsibility

■ The government contends that the district court should not have granted Reynolds a two point reduction for acceptance of responsibility. The government's burden on appeal of this issue is very high. The Guidelines themselves state that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." Section 3E1.1, note 5. Consequently, we review the district court's judgment under a clearly erroneous standard. *See United States v. Zayas,* 876 F.2d 1057, 1060 (1st Cir.1989); *United States v. Ortiz,* 878 F.2d 125, 128 (3d Cir.1989); *United States v. Urrego–Linares,* 879 F.2d 1234, 1239 (4th Cir.1989); *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989); *United States v. Barrett,* 890 F.2d 855, 868–89 (6th Cir.1989); *United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989); *United States v. Spraggins,* 868 F.2d 1541, 1543 (11th Cir.1989) *(per curiam ).* Review of the district court's legal conclusions, however, is under a *de novo* standard. *United States v. Roberts,* 898 F.2d 1465 (10th Cir.1990); *United States v. Jaramillo–Suarez,* 857 F.2d 1368 (9th Cir.1988); *United States v. Torkington,* 874 F.2d 1441 (11th Cir.1989).

At the time of sentencing, Application note 4 of § 3E.1. read:

An adjustment under this section is not warranted where a defendant ... obstructs the trial or the administration of justice (see § 3C1.1), regardless of other factors.

The government contended that this precluded a finding of acceptance of responsibility as the court had found obstruction of the proceedings under § 3C.1.1. The district court, however, found that an increase under § 3C1.1 did not entirely prevent a finding of acceptance of responsibility because conduct under § 3C1.1 does not in all cases rise to the level of obstruction of the trial. The court found that the language of application note 1(d) of § 3C1.1 which relates to "threatening, intimidating, or otherwise unlawfully attempting to influence a codefendant, witness, or juror" was different from the language under application note 4 to § 3E1.1 which requires that the defendant "obstructs the trial or the administration of justice." Based on this difference in language, the court found

2. Several other courts have indicated that § 2D1.1 passes constitutional muster, although in the context of enhancement for possession of a firearm rather than with respect to the quantity of narcotics. *See United States v. McGhee,* 882 F.2d 1095, 1098 (6th Cir.1989); *United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir.1989).

that mutual findings under § 3C1.1 and § 3E1.1 were not barred.

■ We respectfully disagree. Application note 4, on its face, referred to an increase under § 3C1.1 as barring a reduction for acceptance of responsibility. Although the language of application note 1(d) to § 3C1.1 may not match the language in application note 4, any conduct sufficient to warrant an increase must be sufficient to meet the actual language of Guideline 3C1.1, which is directly referred to by application note 4. As a result, the difference between the language of application note 1(d) of § 3C1.1 and the language of § 3E.1. is not sufficient to overcome the direct references between these sections. Moreover, since Reynolds' sentencing, we have the benefit of the amendments to the Guidelines. While the amended Guidelines do not apply for the purposes of this review,[3] the policy statement for the amendment to application note 4 of § 3E1.1 is enlightening. It reads: "The purpose[ ] of this amendment [is] to provide for extraordinary cases in which adjustments under both § 3C1.1 and § 3E1.1 are appropriate . . ."[4] This language indicates that prior to the amendment, the Guidelines did not provide for extraordinary cases where mutual adjustments for acceptance of responsibility and obstruction of justice were appropriate.[5]

Courts that have considered this issue are in unanimous agreement with our holding. *See, United States v. Holland,* 884 F.2d 354 (8th Cir.1989); *United States v. Rivera,* 879 F.2d 1247, 1254 (5th Cir.1989);

*United States v. Zayas,* 876 F.2d 1057, 1060 (1st Cir.1989); *United States v. Valasquez–Mercado,* 872 F.2d 632, 637 (5th Cir.) *cert. denied,* —— U.S. ——, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989); *United States v. Roberson,* 872 F.2d 597, 610 (5th Cir.), *cert. denied,* 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). We agree with these cases that at the time of sentencing, dual findings of acceptance of responsibility and obstruction of proceedings were precluded. Consequently, the district court was in error in finding acceptance of responsibility after finding obstruction of the proceedings. We vacate the sentence, and remand for resentencing.

---

**3.** The amended Guidelines have no application to this case since they were not in effect on the date of sentencing. 18 U.S.C. §§ 3553(a)(4) and (a)(5) (Supp. V 1987). *See United States v. Williams,* 892 F.2d 296, 304 n. 13 (3rd Cir. 1989).

**4.** Application note 4 now reads:
Conduct resulting in an enhancement under § 3C1.1 (Willfully Obstructing or Impeding Proceedings) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 apply.

**5.** The government has not waived this argument. In its initial brief, it contended that

§§ 3C1.1 and 3E1.1 were mutually incompatible as a matter of law and in the alternative that the district court was clearly erroneous. After the government's initial brief but before its reply brief, the Guideline amendments took effect and the government conceded that under the amended Guidelines, mutual findings under §§ 3C1.1 and 3E1.1 were possible. The government still maintained, however, that the district court was clearly erroneous. To reach the government's erroneous argument we must use the applicable pre-amendment Guidelines. The government's concession that under the current Guidelines the district court finding would not be precluded by law does not waive the argument that under the pre-amendment Guidelines, the finding is precluded.