**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary W. ESKE, Defendant–Appellant.**

No. 90–1282.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1990.

Decided Feb. 15, 1991.

Matthew V. Richmond, Asst. U.S. Atty., Office of U.S. Atty., Milwaukee, Wis., for U.S.

Mary E. Gentile, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this direct criminal appeal, we must decide whether uncharged criminal conduct to which the defendant has stipulated pursuant to a plea agreement may be used in determining the appropriate sentencing guideline range under the Federal Sentencing Guidelines, as amended November 1, 1989 ("Sentencing Guidelines"). Our jurisdiction is based upon 28 U.S.C. § 1291. We conclude the use of the uncharged activity in calculating the appropriate guideline range is proper in this case and affirm the defendant's sentence.

## FACTUAL BACKGROUND

On November 16, 1989, Gary Eske pled guilty in the District Court to possession of a firearm by a convicted felon [1] and making false statements in application for a firearm, both in violation of 18 U.S.C. § 922. Eske was sentenced to 16 months incarceration and two years supervised release.[2] Eske has appealed his sentence to this Court.

In the plea agreement, the United States promised not to charge Eske with using a false Social Security number in violation of 42 U.S.C. § 408(g). In return, Eske stipulated to ten such violations dating back to April 18, 1988. Eske agreed that these violations could be used "for determining the appropriate sentencing guideline range." Plea Agreement ¶ 6B(8)(d).

At sentencing, the District Court calculated the offense category by treating the stipulated offenses as if Eske had been convicted of those violations as well as the firearms charge. The Court then included the earlier burglary conviction in Eske's criminal history calculation because he had

---

1. Eske had been convicted and sentenced for burglary in Wisconsin state court on June 19, 1978.

2. At oral argument, both counsel for the United States and for Eske advised us that this dispute might be moot. Eske was scheduled to be released from prison the following day, and we will assume he has been released as scheduled. Counsel for Eske conceded that she believes this case has become stale due to Eske's release, but she has pressed the appeal before this Court on the urging of her client. We conclude Eske's release does not moot this appeal. The District Court sentenced Eske to two years of supervised release to follow his imprisonment. Sentencing Guidelines § 5D1.1 mandates a term of supervised release to follow a sentence of greater than one year. But for terms of one year or less, a period of supervised release is left to the discretion of the sentencing judge. If this appeal were resolved in Eske's favor, his sentence would have been less than one year. The possibility that Eske could avoid his current supervised release upon resentencing prevents this case from being moot.

been sentenced for the burglary less than ten years before the earliest stipulated use (April 18, 1988) of a false Social Security number.

Eske contends that because he has not been charged and convicted of use of a false Social Security number, the ten stipulated offenses cannot be used to determine the offense level. Instead, they can only be used to determine an appropriate point within an already established guideline range. *See generally* Sentencing Guidelines § 1B1.4 (allowing a sentencing court to consider any information concerning the defendant's conduct in selecting an appropriate point within the applicable guideline range). In addition, he contends that his criminal history category must be calculated from the date of the firearms charge in the indictment—October 13, 1988. Using this date, the sentence for the burglary conviction was imposed more than ten years before the commission of the instant offense and beyond his criminal history calculation.

## DISCUSSION

Eske has not appealed his conviction. We are asked only to decide the propriety of Eske's sentence. "The district court's sentence ... will be affirmed if it results from a proper application of the sentencing guidelines to the facts not found to be clearly erroneous." *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989); *see also* 18 U.S.C. § 3742; *United States v. Teta,* 918 F.2d 1329, 1332 (7th Cir.1990). We conclude the language of the Sentencing Guidelines as explained by their commentary defeats this appeal, and so we affirm Eske's sentence.

■ Section 1B1.2(c) of the Sentencing Guidelines answers Eske's contention that the ten uncharged offenses may not be used in determining the appropriate offense level: "A conviction by a plea of guilty ... containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offenses." The commentary to § 1B1.2 explains: "For ex-

ample, if the defendant is convicted of one count of robbery, but, as part of a plea agreement, admits to having committed two additional robberies, the guidelines are to be applied as if the defendant had been convicted of three counts of robbery." commentary note 4. *Compare United States v. Collar,* 904 F.2d 441, 442–43 (8th Cir. 1990) (applying 1B1.2(c) and the commentary and concluding that stipulated offenses are to be treated as convictions in determining the offense level); *see generally United States v. White,* 888 F.2d 490 (7th Cir.1989) (indicating the substantial deference owed to the commentary's explanations of the Sentencing Guidelines).

Eske stipulated to the ten violations and agreed that they would be considered in determining an appropriate guideline range. Stipulated offenses are to be treated as offenses of conviction. Therefore, these violations were properly included in his offense level calculation.

■ Eske has also challenged the use of the ten crimes in determining his criminal history category. Prior sentences are included within the criminal history calculation so long as those sentences were "imposed within ten years of the defendant's commencement of the instant offense." Sentencing Guidelines § 4A1.2(e)(2). The District Court included Eske's 1978 burglary sentence in the criminal history calculation. The burglary sentence was imposed within ten years of the first stipulated offense but more than ten years before the firearms offense charged in the indictment. Eske claims the crime charged in the indictment is the "instant offense" to be used in applying the ten year cutoff.

Once again, the commentary to the Sentencing Guidelines rejects Eske's position. The instant offense "includes any relevant conduct." § 4A1.2 commentary note 8. "Relevant conduct" as defined in § 1B1.3(a)(1) includes "all acts ... committed ... by the defendant ... during the commission of the offense of conviction." The "offense of conviction," as explained above and as mandated by § 1B1.2(c), in-

cludes the stipulated offenses in the plea agreement.

■ Eske's criminal history is to be calculated from the date of the earliest stipulated offense—April 18, 1988. Eske was sentenced for the 1978 burglary less than ten years before he committed the instant offense. The District Court properly considered the burglary sentence in the criminal history calculation.[3]

The decision of the District Court is AFFIRMED.

CUDAHY, Circuit Judge, concurring.

Although I agree fully with the majority's interpretation of the Guidelines, I write separately to point out what seem to me anomalies and pitfalls inherent in their application here.

Eske's sentence seems inconsistent with the important balance struck by the Sentencing Commission between its basic "charge offense" sentencing philosophy and a contrasting "real offense" philosophy. Thus, the Guidelines provide for sentencing in accord with *charged* offenses, with the exception that certain characteristics of the crime may enhance the sentence to reflect the defendant's background or circumstances surrounding the crime. *United States v. Missick*, 875 F.2d 1294, 1302 (7th Cir.1989); Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.REV. 1, 8–12 (1988); U.S.S.G., ch. 1, pt. A, introduction 4(a), at 1.4–1.5 (Nov. 1990). The Commission recognized that its approach potentially afforded prosecutors discretion to affect the length of a sentence by adding counts to an indictment. U.S. S.G., ch. 1, pt. A, introduction 4(a), at 1.5 (Nov. 1990). Eske's case presents a considerably more problematic opening for prose-

cutorial expedients. True, Eske admitted that he committed the uncharged offenses. He "pleaded guilty" to them in an informal way. But it may not be clear that he understood the full consequences of his action. A stipulation of this sort to offenses more serious than the crimes charged (and pleaded to) may have a potential for misleading a defendant with respect to the consequences of a guilty plea.

Defendant Eske no doubt believed that there was a *quid pro quo* in the plea bargain. The plea agreement provided that, "The government-agrees not to charge but the court will consider for determining the appropriate sentencing guideline range the following [Social Security number violations]." Plea Agreement at 5, reproduced in Appellant's Br. at 14. Eske may not have been fully aware that the stipulated, *uncharged* offenses carried a base offense level greater than the *charged* offenses. There is room for doubt that a defendant could fully comprehend this unusual state of affairs before receipt of the Presentence Report. Hope for comprehension of this bizarre problem, in view of the Guidelines' complexity, may be misplaced.

In addition, the cases and example cited in support of today's outcome and discussed in the government's brief do not neatly fit Eske's circumstances. Thus, the example in Application Note 4 to U.S.S.G. section 1B1.2 (defendant pleading to three counts of robbery even though he was convicted for only one should be treated as having committed three robberies) involves crimes that may be closely related and for which the base offense level would likely be the same as that of the charged offense. In *United States v. Collar*, 904 F.2d 441 (8th Cir.1990), the court adjusted the offense level on the basis of two dismissed, less serious counts following the defen-

---

**3.** Eske has raised a final contention that he should have received a two level decrease in offense category for acceptance of responsibility pursuant to § 3E1.1. Eske's burden on this issue is particularly heavy as he is challenging a finding of fact of the District Court. *See United States v. Reynolds*, 900 F.2d 1000, 1004 (7th Cir.1990); *see also* 18 U.S.C. § 3742(e); Sentencing Guidelines § 3E1.1 commentary note 5. All we need say about Eske's argument is that the

District Court imposed a two level increase for obstruction of justice pursuant to § 3C1.1. This upgrade is supported by the record and is not being challenged in this appeal. It cannot be clearly erroneous for a sentencing judge to deny a downward departure for acceptance of responsibility when the judge has already found that the defendant has willfully obstructed justice. *See* § 3E1.1 commentary note 4.

dant's plea to four others. Moreover, the prosecution in *Collar* had *charged* all six offenses and then dropped two in exchange for the plea. *United States v. Williams*, 879 F.2d 454 (8th Cir.1989), similarly stands for the proposition that *dismissed* charged offenses can be used at sentencing and does not speak to *uncharged* offenses. In our own circuit, *United States v. White*, 888 F.2d 490 (7th Cir.1989), and *United States v. Salva*, 894 F.2d 225 (7th Cir.1990), involved uncharged conduct that was part of the activity or course of conduct forming the basis for the charged offenses:

> It is now the clear rule in this circuit that a court may consider activity of which the defendant has not been charged or convicted in determining the appropriate Guidelines sentence, so long as that activity is "part of the same course of conduct or common scheme or plan as the offense of conviction."

894 F.2d at 230 (citing U.S.S.G. section 1B1.3(a)(2), *White*, and *United States v. Vopravil*, 891 F.2d 155, 157–78 & n. 4 (7th Cir.1989) (employing "clearly related conduct" test)). Eske's case, on the other hand, involves a set of unrelated and uncharged offenses that carry a higher base offense level. This is a situation I do not believe the Sentencing Commission fully envisaged.

Another potentially severe cost of "bootstrapping" more serious charges onto a less severe, charged offense may be that defendants are discouraged from pleading. Faced with the prospect of being sentenced for uncharged offenses that may result not in a marginal enhancement of a sentence but in a higher base offense level, what rational defendant would choose to plead? The value of the plea agreement to our justice system is apparent, and prosecutors will have to think carefully about the possible long-term effects of "bootstrapped" stipulations if the uncharged offenses carry a higher base offense level.

The Sentencing Commission has indicated that it "will closely monitor charging and plea agreement practices and will make appropriate adjustments should they become necessary." U.S.S.G., ch. 1, pt. A, introduction 4(a), at 1.5 (Nov. 1990). In the same paragraph the Commission states that "One of the most important [drawbacks of the charge offense system] is the potential it affords prosecutors to influence sentences by increasing or decreasing the number of counts in an indictment." It is not clear whether the Commission considered the similar situation of unrelated, stipulated offenses affecting a sentence in the way illustrated by this case. Attention by the Commission may be in order.