**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James Thomas MOORE, Defendant–Appellant.**

**No. 92–4281.**

United States Court of Appeals, Eleventh Circuit.

Nov. 8, 1993.

---

Sheryl Joyce Lowenthal, Coral Gables, FL, for defendant-appellant.

Linda Collins Hertz, Alice Ann Burns, Jeffrey H. Sloman, Asst. U.S. Attys., Miami, FL, for plaintiff-appellee.

Before COX and BIRCH, Circuit Judges, and SMITH *, Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal presents the issues of using prior unconvicted bank robberies and an alleged threat of death as the bases for increasing a Guidelines sentence. The district court respectively accorded an adjustment and an enhancement on these grounds. We AFFIRM on different grounds the district court's adjustment for the unconvicted robberies and REVERSE and REMAND for resentencing the enhancement for an express threat of death.

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

## I. BACKGROUND

On April 23, 1991, defendant-appellant James Thomas Moore engaged a limousine service to drive him to a convenience store near the Great Western Bank, a federally insured bank in Hollywood, Florida. Moore entered the bank and gave one of the tellers a demand note stating "I HAVE A GUN AND NOTHING TO LOSE. 100s AND 50s NO DYE MONEY." When the teller advised Moore that she did not have bills in $100 denominations, he requested $10 bills. Moore, who was not armed, took $2,576 from the bank.

A witness in the area saw a man fitting Moore's description exit a white limousine and noted the license number. The witness saw Moore enter the bank, and, several minutes later, run from the bank, get into the limousine and depart. After entering the bank and learning that a robbery had occurred, the witness provided the Hollywood Police Department with a description of Moore and the white limousine. The limousine was stopped by the police, and Moore was taken into custody. The bank teller identified Moore as the person who had robbed the bank.

Following a one-count indictment for violation of 18 U.S.C. § 2113(a), Moore entered into a plea agreement with the government. In addition to pleading guilty to the Great Western Bank robbery, Moore, in paragraph 2 of the plea agreement, also admitted robbing fourteen other federally insured institutions. In paragraph 3, the plea agreement further provided:

> The parties agree that the bank robberies referred to in paragraph 2 shall be considered for purposes of sentencing only, that the amounts of money taken from each of the abovementioned institutions shall be used to calculate defendant's sentencing guidelines level and the United States shall be barred from future prose-

cutions of the defendant on any robbery referred to in paragraph 2.

R1–13–3.

At the plea proceedings, the federal public defender representing Moore explained to the court that Moore would plead guilty to the one-count indictment and that the unindicted robberies were to "be considered by the court for relevant conduct. There will not be a plea to them. [The] United States has promised and bound itself not to prosecute any other bank robberies. The reason for that is to keep him [Moore] from career offender problems." R2–2.

In arriving at Moore's offense level, the presentence report (PSR) includes the unindicted bank robberies[1] as well as the robbery to which he pled guilty. The PSR purports to encompass the unindicted robberies based upon sections 3D1.4, combined offense level, and 1B1.3, relevant conduct, of the Sentencing Guidelines. PSR at 7, 30. The inclusion of the unindicted robberies resulted in a five-level increase in Moore's offense level. Additionally, Moore received a two-level increase pursuant to section 2B3.1(b)(2)(F) of the Sentencing Guidelines for an express threat of death for his statement to the teller that "I HAVE A GUN AND NOTHING TO LOSE." PSR at 8.

Different counsel for Moore filed objections to the PSR and moved for specific performance of the plea agreement. Supporting these objections and motion was an affidavit by Moore stating as follows:

> The explanation of the plea agreement offered by my present counsel is the same explanation I was given by my public defender ... at the time of the execution of the plea agreement. I understood that as a result of the plea agreement which was executed, consideration of my fourteen prior robberies for the purposes of calculating the Guidelines level would be limited to the amounts of money involved in those robberies and that the number of robberies

---

1. We note that the PSR lists fifteen unindicted robberies, whereas the plea agreement lists fourteen such robberies. Moore, however, has not contested the additional unindicted robbery in the PSR. At the plea proceeding, Moore's counsel informed the court that there were additional unindicted robberies in Palm Beach County and

that it was "our desire to have those included in this [plea] agreement as well." R2–2. Because the additional unindicted robbery would not affect the five-level, or highest adjustment that Moore received under section 3D1.4 as discussed subsequently, we ignore this inconsistency.

would not be used to calculate the Guidelines level.

R1–27–Affidavit of James T. Moore.

At the sentencing proceeding, Moore's counsel objected to the PSR because the probation officer had used the unindicted robberies to increase Moore's offense level by five levels. Moore's counsel stated that he considered this adjustment to be in contravention of paragraph 3 of the plea agreement. The attorney also objected to the two-level increase in Moore's offense level for an express threat of death. He explained that Moore's words and actions did not fit the examples given in the Sentencing Guidelines commentary for an increase for an express threat of death. The district judge overruled Moore's objections to the PSR and denied his motion to compel specific performance of the plea agreement:

> The Court finds that the terms of the plea agreement are clear and unambiguous, and that pursuant to those terms the Court is authorized to consider the bank robberies referred to in paragraph two ... of the plea agreement for purposes of sentencing.

> Accordingly, the Court finds that the total offense level is indeed 27, and will adopt that finding and conclusion as made by the Probation Office of this Court.

R3–12–13.

Moore was sentenced to 144 months of imprisonment, three years of supervised release, and a $50 assessment. After his sentence was pronounced, Moore's attorney stated that he reiterated all of his arguments relating to Moore's five-level and two-level increases in offense level. The district judge overruled those objections. Moore is incarcerated.

## II.  DISCUSSION

■ On appeal, Moore pursues his contentions that his sentence should not have been increased under the Sentencing Guidelines for the unindicted bank robberies and for an express threat of death in the robbery to which he pled guilty. A sentencing court's factual findings are reviewed under the clear-ly erroneous standard, while the court's legal interpretation of the Sentencing Guidelines is subject to *de novo* review. *United States v. Odedina*, 980 F.2d 705, 707 (11th Cir.1993) (per curiam). Since both issues on appeal involve the sentencing court's application and interpretation of the Sentencing Guidelines, our review is *de novo*.

### A.  *Adjustment for Unconvicted Robberies*

In the plea agreement, Moore admits taking money from fourteen federally insured institutions, robberies for which he was not indicted and, necessarily, not convicted. The parties agreed that these robberies would be used for sentencing only, that the amounts taken would be used to calculate Moore's Sentencing Guidelines level, and that the government would be precluded from prosecuting him for any of the unindicted robberies. The district judge adopted the PSR, wherein Moore's offense level was adjusted by five levels for the unindicted robberies. Moore complains that "[b]y specifying the amount of monies from the robberies in calculating the level, the parties excluded the robberies themselves as a basis for guidelines level calculation." Appellant's Reply Brief at 3.

■ Implicit in the challenged provision of the plea agreement is the parties' apparent assumption that *the unconvicted robberies could be used* in determining Moore's Guidelines sentence. Indeed, Moore contests only the *way* that the unconvicted robberies were used in his Guidelines sentence calculation: to increase his offense level by five levels. Our threshold inquiry, therefore, is to determine whether the parties were correct in their bargaining premise that the unconvicted robberies could be used in calculating Moore's sentence under the Guidelines.

Under the applicable Sentencing Guidelines, "[a] conviction by a plea of guilty or *nolo contendere* containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." U.S.S.G.

§ 1B1.2(c) (1991) [2]. Further explaining this section, the accompanying application note states:

> Subsections (c) and (d) address circumstances in which the provisions of Chapter Three, Part D (Multiple Counts) are to be applied although there may be only one count of conviction. Subsection (c) provides that *in the case of a stipulation to the commission of additional offense(s), the guidelines are to be applied as if the defendant had been convicted of an additional count for each of the offenses stipulated.* For example, *if the defendant is convicted of one count of robbery but, as part of a plea agreement, admits to having committed two additional robberies, the guidelines are to be applied as if the defendant had been convicted of three counts of robbery.*

U.S.S.G. § 1B1.2, comment. (n.4) (emphasis added); *see Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1918, 123 L.Ed.2d 598 (1993) (holding that Guidelines commentary is binding on federal courts). When an appellant challenged his sentence for including ten uncharged crimes to which he had stipulated in his plea agreement, the Seventh Circuit, relying on section 1B1.2(c) and its commentary, determined that "[s]tipulated offenses are to be treated as offenses of conviction." *United States v. Eske,* 925 F.2d 205, 207 (7th Cir.1991); *see United States v. Collar,* 904 F.2d 441, 442–43 (8th Cir.1990) (where the appellant pleaded guilty to four robberies and stipulated to two additional robberies, the Eighth Circuit applied section 1B1.2(c) and commentary to conclude that stipulated offenses are to be treated as convictions in determining the offense level).

Moore stipulated in his plea agreement to fourteen, unconvicted robberies of federally insured institutions. "Legislative intent regarding the treatment of stipulated offenses could not be stated with greater clarity"; under "the plain language of the Guidelines," these unconvicted robberies are treated *as if* they were additional counts of conviction for sentencing purposes.[3] *Collar,* 904 F.2d at 443. The five-level adjustment is the highest and appropriate increase in Moore's sentence under section 3D1.4 given the inclusion of the additional unconvicted robberies.[4] There-

**2.** Neither party cited to the district court or to us this dispositive section, which presently provides: "*A plea agreement* (written or made orally on the record) *containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s).*" U.S.S.G. § 1B1.2(c) (1992) (emphasis added).

**3.** We note that section 1B1.2(c), Applicable Guidelines, is included under Part B—General Application Principles of the Sentencing Guidelines. Subsequent Part D—Multiple Counts includes section 3D1.4, the section stating the determination for the combined offense level and the section under which the district court adjusted Moore's sentence by five levels. We are cognizant that the prefatory comments to Part D state that "[t]his Part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted." U.S.S.G. ch.3, pt.D, intro. comment. Under the preceding generally applicable guideline, section 1B1.2(c), the Guidelines give the specific instruction that stipulated unconvicted offenses are to be considered counts of conviction subject to multiple-count consideration under Part D. U.S.S.G. § 1B1.2, comment. (n.4.) In contextual sequence, we see no contradiction in meaning concerning the sentencing treatment of unconvicted offenses. Our conclusion is verified when the factual scenario implicated in Moore's case, or conviction for one count of robbery cumulated with stipulated unconvicted robberies in a plea agreement, is given as an example in the commentary to section 1B1.2. *Id.*

**4.** We are not without precedent in our circuit for finding that a Guidelines sentence can be based on unconvicted offenses. In another context, the "same course of conduct or common scheme or plan as the offense of conviction," section 1B1.3(a)(2), we have joined six of seven circuits concluding that, for Guidelines sentencing purposes, a defendant may be sentenced for the total amount that was the object of a drug trafficking conspiracy, even if that object was not achieved or the defendant pled guilty to a lesser amount. *United States v. Alston,* 895 F.2d 1362, 1371 (11th Cir.1990) (citing *United States v. Blanco,* 888 F.2d 907 (1st Cir.1989); *United States v. White,* 888 F.2d 490 (7th Cir.1989); *United States v. Fernandez,* 877 F.2d 1138 (2d Cir.1989); *United States v. Mann,* 877 F.2d 688 (8th Cir.1989); *United States v. Sailes,* 872 F.2d 735 (6th Cir. 1989); *United States v. Sarasti,* 869 F.2d 805 (5th Cir.1989)); *see also United States v. Ignancio Munio,* 909 F.2d 436, 438–39 (11th Cir.1990) (per curiam) ("This expansive view of what conduct may be considered as relevant conduct is

fore, under the Sentencing Guidelines, Moore's stipulated, unconvicted robberies correctly were used in his sentencing, and the district court also applied the proper five-level adjustment to Moore's offense level under section 3D1.4.[5]

■ Because the parties correctly presumed that Moore's unconvicted robberies could be used in his Guidelines sentence, we advance to Moore's contention that they were not *used* in his sentencing in accordance with the parties' agreement in paragraph 3 of the plea agreement. While neither Moore nor the government has explained precisely *how* the amounts of money taken in each of the unconvicted robberies was to be factored into the calculation of his Guidelines sentence, Moore nevertheless argues for specific performance of the plea agreement. In an analogous case, the appellant claimed that his plea agreement was an "empty bargain" because he pleaded guilty to one postal theft in exchange for the government's agreement not to prosecute eighteen unconvicted postal thefts, which were considered by the district court in sentencing him. *United States v. Scroggins*, 880 F.2d 1204, 1213 (11th Cir. 1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). Concluding that consideration of the appellant's other thefts "was neither unfair nor inequitable," we determined that the district court was "required" to consider the unconvicted thefts *under section 1B1.3, relevant conduct*, "in assessing the seriousness of appellant's offense of conviction." [6] *Id.* at 1214; *see United States v. Ignancio Munio*, 909 F.2d 436, 438 (11th Cir.1990) (per curiam) ("Offense conduct is the product of applying the relevant conduct provision to the offense of conviction.").

Under section 1B1.2(c), the district judge similarly *was required* to consider Moore's unconvicted robberies, to which he stipulated in his plea agreement, as additional counts of conviction and the bases for offense-level adjustment under section 3D1.4 in determining his Guidelines sentence.[7] Even if the parties

---

mirrored in the guidelines' approach to sentencing for the quantity of drugs involved in a drug negotiation, even though the transaction is never consummated."), *cert. denied*, 499 U.S. 938, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991). *But see United States v. Restrepo*, 883 F.2d 781 (9th Cir. 1989) (disallowing sentencing consideration of drug amounts not contained in the offence of conviction), *reh'g en banc*, 946 F.2d 654 (9th Cir.1991) (concluding that section 1B1.3(a)(2) satisfies due process), *cert. denied*, —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). "The idea that a sentencing court may consider conduct not covered by the counts of conviction is neither new nor radical." *Alston*, 895 F.2d at 1372.

5. In according Moore the highest, five-level offense adjustment for "[m]ore than 5" units under section 3D1.4, which provides a combined offense level based on grouping of the number of offense counts, the district court did include the stipulated fourteen unconvicted robberies without further adjustment. U.S.S.G. § 3D1.4; *see* U.S.S.G. § 3D1.4, comment. (backg'd) ("Inasmuch as the maximum increase provided in the guideline is 5 levels, departure would be warranted in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units."); *United States v. Dawson*, 1 F.3d 457, 462 (7th Cir.1993) (explaining that a five-level offense increase encompasses and "does not ignore or discount" the sixth or additional offenses to be considered for sentencing purposes).

6. We explained the reasoning for a sentencing court's consideration of unconvicted offenses affording a multiple-count adjustment in connection with relevant conduct:

> Appellant argues that he was sentenced for nineteen thefts—eighteen of which did not result in a conviction. We disagree. Appellant was sentenced for the December 16 theft alone, but in assessing the seriousness of that offense the guidelines took into account the fact that appellant's offense of conviction was not an isolated event, but rather was the last of a series of offenses. The evidence of these prior thefts eliminates any argument that some concatenation of fortuitous circumstances provoked appellant into committing his offense of conviction on the spur of the moment: appellant's prior thefts establish that he acted purposefully on December 16, having had the opportunity to consider the criminality of his act and its consequences. Such purposeful criminal conduct demands greater punishment, both to reflect society's desire for retribution and to ensure specific deterrence against future criminal conduct by appellant. In aggregating the loss occasioned by all of appellant's thefts, therefore, the guidelines reflect the full magnitude of appellant's culpability.

*Scroggins*, 880 F.2d at 1213.

7. Because consideration of the unconvicted robberies to which Moore stipulated in the plea agreement is controlled by section 1B1.2(c), reference to its consideration as relevant conduct under section 1B1.3(a)(2), the understanding of

had agreed that these unconvicted robberies were to be used in calculating Moore's Guidelines sentence in some other way, the district court *was obligated* to consider these unconvicted robberies as it did.[8] *See Scroggins,* 880 F.2d at 1214 ("[T]he Government's agreement to drop count one of appellant's indictment [did not] somehow impliedly preclude the district court from considering evidence of appellant's other thefts—*under guideline sentencing, counsel cannot bind the sentencing discretion of the district judge or cloak the facts to reach a result contrary to the guidelines' mandate.*" (emphasis added)). Concerning section 1B1.2(c), "[a] sentencing court hardly could be given a more explicit directive." *Collar,* 904 F.2d at 443.

## B. *Enhancement for Express Threat of Death*

■ Moore also contests his two-level enhancement for his note to the bank teller stating that "I HAVE A GUN AND NOTHING TO LOSE." During the commission of a robbery, "if an express threat of death was made, [the Sentencing Guidelines provide an] increase by 2 levels." U.S.S.G. § 2B3.1(b)(2)(F). The explanatory commentary for application purposes gives additional guidance through vivid examples:

> An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give

me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that *the intent of the underlying provision is to provide an increased offense level for* cases in which the offender(s) engaged in *conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.*

U.S.S.G. § 2B3.1(b)(2)(F), comment. (n.7) (emphasis added).

Moore's complete note to the teller stated that "I HAVE A GUN AND NOTHING TO LOSE. 100s AND 50s NO DYE MONEY." After reading the note, the teller advised Moore that she did not have $100 bills. Moore then requested $10 bills, took the money, and left the bank. He was not armed. The demand was the type that would instill in a reasonable person the type of fear ordinarily associated with a robbery. Importantly, the teller exhibited composure and not fright. She responded to the note by telling Moore that his specific demand could not be met and complied with his modified request. These are not the words or actions of a victim experiencing "significantly greater fear than that necessary to constitute an element of the offense of robbery" to warrant imposition of the two-level increase. U.S.S.G. § 2B3.1(b)(2)(F), comment. (n.7).

■ Additionally, the threat must be directly and distinctly stated or expressed rather than implied or left to inference, and

Moore's attorney and the probation officer who prepared the PSR, is misplaced. Relevant conduct under section 1B1.3(a)(2) applies to crimes involving fungible items, such as drugs and money, which are listed in the cross-referenced, multiple-count subsection; "courts will *not* use § 1B1.3(a)(2) to look to acts that are part of the 'same course of conduct or common scheme or plan,'" "such as murder or bank robbery." *Blanco,* 888 F.2d at 911. In the context of stipulated unconvicted offenses, relevant conduct generally pertains to criminal history and not to offense level. *See Eske,* 925 F.2d at 207–08.

8. We additionally note that paragraph 5 of the plea agreement provides:

The United States and the defendant understand and agree that:
> (a) *the court is not bound by any recommendation or request regarding the sentence to be imposed;*
> (b) *the court may impose any sentence authorized by law;* and
> (c) the defendant may not withdraw his plea solely because the court does not follow the recommendation or request.

R1–13–3 (emphasis added). *See Scroggins,* 880 F.2d at 1214 ("[A]ppellant by no means received a sentence that he could not have anticipated—to the contrary, appellant could have predicted that the court would so act" under the Sentencing Guidelines.).

the threat "must be of death, or activity that would cause the victim to be in reasonable apprehension of his or her life" for section 2B3.1(b)(2)(F) to be applicable. *United States v. Tuck*, 964 F.2d 1079, 1080–81 (11th Cir.1992). Not only is any mention of death to the victim teller absent in Moore's note requiring inference to reach this conclusion, but also Moore's statement that he had nothing to lose could be interpreted to mean that he was desperate and willing to turn the alleged gun on himself, not the teller. These speculations show that Moore's statement was not distinctly clear to comport with the apparent threat-of-death examples given in the Guidelines commentary to section 2B3.1(b)(2)(F).

Moreover, we have determined that "[t]he statement, 'I have a gun' is not a[n] express threat of death within the context of [s]ection 2B3.1(b)(2)( [F] )"; while "it may imply a threat to use the gun, ... that does not constitute an express death threat." *United States v. Canzater*, 994 F.2d 773, 775 (11th Cir.1993) (per curiam). Therefore, Moore's statement that he had a gun was not sufficient to enhance his sentence for an express threat of death. Because Moore's note to the teller did not create in her the fear contemplated by the Guidelines for an enhancement or state an express threat of death as interpreted by our circuit, the district court improperly enhanced Moore's sentence by two levels under section 2B3.1(b)(2)(F).

## III. CONCLUSION

In this appeal, Moore contended that his sentence should neither have been adjusted for the fourteen unconvicted robberies to which he stipulated in his plea agreement nor enhanced for an express threat of death. Because the Sentencing Guidelines mandate that the stipulated unconvicted robberies be considered as convictions for sentencing purposes, the district court properly gave Moore a five-level adjustment for these unconvicted robberies. Moore's demand note, however, did not constitute an express threat of death warranting a two-level enhancement in his sentence. Accordingly, we AFFIRM the district court's five-level adjustment for the stipulated unconvicted robberies, but RE-VERSE the imposition of a two-level enhancement for an express threat of death. We REMAND this case for resentencing consistent with this opinion.