NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2016
Decided June 20, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2288

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 14-cr-00108 |
| TIANA L. WILLIAMS, *Defendant-Appellant.* | James D. Peterson, *Judge.* |

**O R D E R**

Tiana Williams was charged by indictment with several crimes relating to her role in helping Charles Evans sell heroin. She eventually pleaded guilty to conspiring to intimidate a witness, *see* 18 U.S.C. §§ 371, 1512(b), but as part of her plea agreement, she also stipulated that, as charged in the indictment, she had conspired with Evans to possess and distribute heroin, *see* 21 U.S.C. §§ 846, 841(a)(1). The district court calculated her guidelines imprisonment range as though she had been convicted of the drug conspiracy, *see* U.S.S.G. § 1B1.2, and sentenced her to 24 months' imprisonment.

Williams filed a notice of appeal, but her appointed counsel represents that the appeal is frivolous and seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We invited Williams to respond to counsel's motion, *see* CIR. R. 51(b), but she has not. Counsel's supporting brief explains the nature of the case and discusses points that could be expected to arise on appeal, and because counsel's analysis appears to be thorough, we limit our review to the subjects she discusses. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014); *United States v. Wagner*, 103 F.3d 551, 553 (7th Cir. 1996).

Williams and Evans sold heroin from her apartment from May to September 2014. One of their customers, J.J., purchased heroin once, sometimes twice, daily during those months for a total of approximately 113 grams. By late August, J.J. owed Evans $3,500 for heroin, plus more money for a car he had purchased from Evans. When J.J. didn't pay, Evans assaulted him and broke his jaw. J.J. then borrowed money and paid Evans. He was still afraid, but he also told his own probation officer about the debt and beating.

J.J.'s report to his probation officer apparently led police to detain Evans on a "probation hold" on September 9, 2014. While in jail, Evans used a monitored jail telephone to call Williams. Williams related that, based on what she had gleaned from his probation officer, someone apparently had accused him of selling drugs and committing a battery. Evans replied that Williams should call "Smiley," a frequent customer, and tell him to find the "dude fixing on the car." Smiley understood this to mean J.J., and on September 19, he and Williams drove to J.J.'s house intending to convince him to change his story. But J.J. wasn't home, so the pair returned the next day and told his mother that J.J. must recant his accusations. Williams talked again to Evans on a monitored jail telephone and reported that she had delivered the message through J.J.'s mother.

The message did not have the desired effect, however. J.J. alerted investigators and said that he felt threatened and feared for himself and his family. The investigators confronted Williams, who initially denied going to J.J.'s house. In a third monitored call the following day, Williams told Evans that she had lied to the investigators by denying that she went to J.J.'s house and saying that she did not know Smiley.

At that point federal authorities already were investigating Evans and Williams for heroin trafficking. One customer told investigators that over time she and her boyfriend had bought 70 to 105 grams of heroin, often at Williams's apartment. Another customer said that he had seen Evans with a softball-sized chunk of heroin, and that he had purchased heroin about 20 times from Evans and Williams. And Smiley estimated that he had bought heroin from Evans probably 50 times, with Williams present on 10

to 20 of those occasions. Smiley's girlfriend said, moreover, that she had purchased heroin about 50 times from Williams—or sometimes Evans—usually at Williams's apartment.

Federal authorities indicted Evans and Williams on October 29, 2014, and arrested them the next day. Instead of pleading to a charged drug crime, however, Williams negotiated a guilty plea to a superseding indictment charging that she had conspired to intimidate J.J. into recanting accusations against Evans, *see* 18 U.S.C. §§ 371, 1512(b). In her plea agreement, though, Williams also stipulated that she had "engaged in a drug conspiracy" and acknowledged that the district court would compute her imprisonment range as if she had been convicted of violating 21 U.S.C. § 846. *See* U.S.S.G. § 1B1.2(c). But her admission of relevant conduct was limited to a maximum of 100 grams of heroin, which yielded a base offense level of 22. *See* U.S.S.G. § 2D1.1(a)(5), (c)(9). And the government agreed that she qualified for a 2-level downward adjustment based on her minor role and a 3-level downward adjustment for acceptance of responsibility. The probation officer accepted these calculations uncritically and then stopped without further computing the adjusted offense level for the witness-intimidation conspiracy or applying a multiple-count adjustment. *See* U.S.S.G. §§ 1B1.1(a)(1–4), 1B1.2(c). At sentencing the district court adopted the probation officer's application of the guidelines without objection from either party and calculated an imprisonment range of 24 to 30 months based on a total offense level of 17 and a criminal-history category of I. The court sentenced Williams to 24 months plus a year of supervised release.

Appellate counsel represents that Williams is not interested in challenging the validity of her guilty plea, *see United States v. Konczak*, 683 F.3d 348, 349 (7th Cir. 2012); *United States v. Knox*, 287 F.3d 667, 670–71 (7th Cir. 2002), so the only potential claims for appeal concern the legality of the sentence. Counsel first considers whether the imprisonment range was correctly calculated. Although Williams pleaded guilty to a conspiracy involving an attempt to intimidate a witness, she also stipulated to committing the drug conspiracy charged in the indictment. "Under the Guidelines, stipulated offenses are treated as offenses of conviction and are properly included in the offense level calculations." *United States v. Panice*, 598 F.3d 426, 432 (7th Cir. 2010); *see* U.S.S.G. § 1B1.2 & cmt. nn.1, 3; *United States v. Eske*, 925 F.2d 205, 207 (7th Cir. 1991). Thus the district court was correct in seeking to hold Williams accountable for the heroin conspiracy as if she also had been convicted of that offense.

Yet that is not to say, as appellate counsel does, that the guidelines were applied correctly. Williams was *convicted* of one conspiracy, *see* 18 U.S.C. §§ 371, 1512(b), and she *stipulated* to being involved in a different conspiracy, *see* 21 U.S.C. §§ 846, 841(1)(1). The parties thus appropriately agreed that § 1B1.2(c) governs, meaning that Williams

should have been sentenced as if she had been convicted of both conspiracies. *See United States v. Kieffer*, 794 F.3d 850, 852 (7th Cir. 2015); *Eske,* 925 F.2d at 207. Instead the probation officer, and ultimately the district court, mistakenly treated this case as if it were governed by U.S.S.G. § 1B1.2(a), and as a result the court did not incorporate the witness-intimidation conspiracy into the guidelines range.

Nevertheless, an appellate claim based on this omission would be frivolous because the mistake worked to Williams's advantage. She had admitted committing two crimes, and so the district court should have calculated a combined offense level using the procedure established in Chapter 3, Part D. To start, the adjusted offense level for the drug conspiracy should have been 22, given the drug quantity admitted by Williams. *See* U.S.S.G. §§ 2D1.1(c)(9) (base level of 22 for at least 80 grams but less than 100 grams of heroin), 3B1.2(b) (2-level reduction for minor role), 3C1.1 (2-level increase for obstruction of justice). On the other hand, the adjusted offense level for the obstruction conspiracy should have been 14. *See id.* §§ 2X1.1(c)(1), 2J1.2, 3B1.2(b), 3C1.1. To determine the combined offense level, the district court should have applied U.S.S.G. § 3D1.4 and assigned 1 unit for the drug conspiracy (because it has the highest adjusted offense level) and ½ unit to the obstruction conspiracy (because it is more than 4 levels less than the adjusted offense level for the drug conspiracy). Since this totals 1½ units, 1 offense level should have been added to the adjusted offense level for the greater offense (the drug conspiracy). *Id.* § 3D1.4. So the combined adjusted offense level for all conduct should have been 23. After subtracting 3 levels for acceptance of responsibility (which, as to Williams, the district court deemed appropriate despite her attempt to obstruct the investigation), her total offense level should have been 20, not 17, and her imprisonment range, 33 to 41 months, not 24 to 30 months.

What is more, even that higher imprisonment range assumes that the parties entered into a defensible stipulation as to drug quantity, but appellate counsel does not address how the parties could have calculated a heroin quantity for Williams that falls below 100 grams. The probation officer and district court accepted without question the stipulation of less than 100 grams, even though Evans—Williams's coconspirator—had stipulated that the conspiracy involved somewhere between 100 and 400 grams. The higher amount would have yielded a base offense level of 24, not the Level 22 assigned to Williams. *See* U.S.S.G. § 2D1.1(c)(8). The parties might have thought that Williams's "jointly undertaken activity" was less than the full scope of Evans's conduct. *See id.* § 1B1.3(a)(1)(B); *United States v. Nunez,* 673 F.3d 661, 662 (7th Cir. 2012). But that seems unlikely since Evans was *storing* the heroin at Williams's apartment. Once again, though, Williams only benefitted from what seems to be an understatement of her drug quantity, so any appellate claim would be frivolous.

Finally, counsel asserts that it would be frivolous for Williams to contest the reasonableness of her prison sentence. The 24-month term is within the (probably

understated) guidelines range of 24 to 30 months and thus is presumptively reasonable. *See United States v. Cruz*, 787 F.3d 849, 851 (7th Cir. 2015). Counsel has not identified a reason to disturb that presumption, nor can we detect one. The district court properly acknowledged Williams's history and characteristics, *see* 18 U.S.C. § 3553(a)(1), including her difficult upbringing by a mother with severe mental-health issues, her loss of a baby, her attempts to earn a college degree, and her minimal criminal background. The court also considered the nature and circumstances of the offense: Evans had bullied and threatened Williams into conspiring with him, yet she had jeopardized herself by her greed. Thus counsel is correct that a challenge to Williams's prison sentence would be frivolous.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.